IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERWIN LONGMIRE,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND, HOWARD JORDAN, SEAN WHENT and DOES 1-50 inclusive,<br><br>    Defendants.<br>_____/ | No. C 10-01465 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Now before the Court is the motion to dismiss filed by defendants City of Oakland, Howard Jordan, and Sean Ghent (collectively, "Defendants"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

**BACKGROUND**

According to the allegations in the complaint, Plaintiff Derwin Longmire, a Sergeant with the City of Oakland Police Department, was assigned to the homicide division in 2007 when he was accused by other officers of interfering with the police department's criminal investigation into the Black Muslim Bakery ("the Bakery"). (Compl. at ¶¶ 3, 9, 10.) Members of the Bakery had been suspected of being involved in two homicides, a kidnapping, a robbery, torture, and a shooting. (*Id.* at ¶ 11.)

On the morning of August 2, 2007, Chauncey Bailey, a well-respected reporter who was

investigating the Bakery for the Oakland Post, was gunned down in Oakland. (*Id*. at ¶ 12.) As Plaintiff was on call at the time, he was assigned to the homicide investigation. (*Id*.) Evidence was obtained linking the Bakery to the Bailey murder and Plaintiff obtained a confession from Devaundre Broussard. (*Id.* at ¶ 13.) Shortly after his arrest, Broussard accused Plaintiff of beating the confession out of him. This complaint resulted in the initiation of an Internal Affairs ("IA") investigation against Plaintiff. (*Id.* at ¶ 15.)

Several police officers suspected that Plaintiff compromised the investigation of the Bailey murder because of his association with the Bakery. (*Id.* at ¶¶ 16-17.) Plaintiff alleges that the chief and others in command positions had a history of initiating and manipulating IA investigations for personal, political and discriminatory reasons and focused their investigation of Plaintiff on the basis of his religion and/or association with the Bakery. (*Id.* at ¶¶ 18, 19.)

Plaintiff also alleges that people close to the investigation illegally leaked confidential information to the press which resulted in a series of front page newspaper articles alleging that Plaintiff compromised the Bailey homicide investigation. Plaintiff alleges these leaks were authorized and/or ratified by the defendant officers. (*Id*. at ¶¶ 20, 21.) As a result of the press coverage, the Mayor requested that Plaintiff be investigated by the California Department of Justice. Plaintiff alleges this investigation, which concluded that Plaintiff had compromised the Bailey homicide investigation, was biased and result-oriented. (*Id.* at ¶¶ 22, 23, 26.)

In March 2009, a second IA investigation was initiated into alleged misconduct by Plaintiff in relation to performance issues on other, unrelated homicide cases. (*Id.* at ¶ 27.) On March 17, 2009, Plaintiff sent a letter through his attorney to the Oakland Police Department complaining about the IA investigator. (*Id*. at ¶ 28.)

The first internal investigation concluded that Plaintiff had compromised the Bailey homicide investigation and Plaintiff was suspended and placed on administrative leave. (*Id.* at ¶¶ 29, 30.) Plaintiff complained to the department that the investigation of him was faulty and the City Attorney responded with an offer to return to work in exchange for agreeing not to sue the City. (*Id.* at ¶¶ 32-35.) Plaintiff refused to sign the release and was subsequently ordered to return to work and was served with a proposed 20-day suspension for alleged misconduct

related to the more recent investigation of unrelated homicides. (*Id.* at ¶ 37, 38.) Plaintiff received no discipline for his conduct relating to the investigation of the Bailey murder. (*Id.* at ¶ 38.)

Plaintiff alleges a cause of action for violation of 42 U.S.C. § 1983 against the individual officers for violating his right to petition and freedom of speech, religion and association guaranteed by the First Amendment, his right to privacy guaranteed by the Fourth and Ninth Amendments and his right to due process and equal protection guaranteed by the Fourteenth Amendment. Plaintiff alleges he was targeted because he was perceived to be a member of the Black Muslim religion and/or was associated with the Bakery. Plaintiff states that he is an African-American of Christian faith who was never associated with the Bakery. Plaintiff alleges a second cause of action against the City of Oakland for violation of 42 U.S.C. § 1983 and a third cause of action against the City for violation of 42 U.S.C. § 1981 based on disparate treatment motivated by Plaintiff's race and perceived association with the Muslim religion.

The Court will address additional facts as necessary in the remainder of this order.

## ANALYSIS

**A.    Legal Standards Applicable to Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the

3

claim and must "provide the grounds of his entitlement to relief." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (internal brackets and quotations omitted). The pleading must not merely allege conduct that is conceivable. Rather, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**B. Motion to Dismiss Claims for Relief Under the First Amendment.**

    **1. Free Speech.**

        **a. Retaliation for internal complaints.**

Plaintiff alleges that he "exercised his rights under the First Amendment and sent a letter to the Oakland Police Department complaining about IA investigator Diane Ward." (*See* Compl. at ¶ 28.)

A First Amendment retaliation claims against a government employer involves

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

The threshold and "essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Desrochers v. City of San Bernadino*, 572 F.3d 703, 709 (9th Cir. 2009) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Such an "inquiry is purely a question of law." *Eng*, 552 F.3d at 1070; *see also Connick*, 461 U.S. at 148 n.7 ("The inquiry into the protected status of speech is one law, not fact"). "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995).

First, the Court must look at the content of the speech to determine whether it involves "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *McKinley v. City of Eloy*,

4

705 F.2d 1110, 1114 (9th Cir. 1983) (citation omitted). Whether a public employee's speech or expressive conduct involves a matter of public concern depends upon the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. A public employee's speech deals with a matter of public concern when is "can be fairly considered as relating to a matter of political, social, or other concern to the community." *Voigt v. Savell*, 70 F.3d 1552, 1559 (9th Cir. 1995). "Speech that deals with 'complaint over internal office affairs' is not protected when it is not relevant to the public's evaluation of a governmental agency's performance." *Nunez v. Davis*, 169 F.3d 1222, 1227 (9th Cir. 1999) (quoting *Connick*, 461 U.S. at 149). "[S]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley*, 705 F2d at 1114): *see also Connick*, 461 U.S. at 154 (stating that speech limited to "an employee grievance concerning internal policy" is unprotected). The same would be true of "speech that relates to internal power struggles within the workplace," and speech which holds no interest "beyond the employee's bureaucratic niche." *Desrochers*, 572 F.3d at 710 (quoting *Tucker v. Cal. Dep't of Education*, 97 F.3d 1204, 1210 (9th Cir. 1996) (citations omitted)).

Although not all employee grievances amount to matters of public concern, there "is a significant distinction between complaints of a poor working relationship with one's superior and complaints involving on-the-job ... anti-Semitism, ... discrimination, and allegations of racial and gender bias." *Id.* at 711 n.7 (citing *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009); *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1201 (9th Cir. 2000)); *see also Eng*, 552 F.3d at 1072 (holding that communications on matter relating to the functioning of government are matters of inherent public concern); *Huppert v. City of Pittsburgh*, 574 F.3d 696, 704 (9th Cir. 2009) (holding that unlawful conduct by a government employee is a matter of public concern). Proceedings before an administrative tribunal constitute a matter of public concern "if they bring to light potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925

5

(9th Cir. 2004) (citations omitted). In *Cochran*, the court held that, although related to complaints over internal affairs, the public employee's speech related to issues of public concern because the "nature of the speech was conducive to racial and gender tension" having a tendency to disrupt the department and which are therefore "matters which are relevant to the public's evaluation of its police department." *Cochran*, 222 F.3d at 1200-01.

Although here the Court may infer that the content of the speech (presumably the letter dated March 17, 2009 referred to in paragraph 28 of the Complaint) relates to Plaintiff's treatment based on protected status, the relevant facts are not sufficiently alleged. Unlike an ordinary internal grievance, this type of speech may have had a tendency to disrupt the department and therefore become a matter of public concern. *See Desrochers*, 572 F.3d at 710; *Cochran*, 222 F.3d at 1200-01. However, because the Court cannot determine the content of the speech based on the current pleading,[1] the Court grants Defendants' motion to dismiss this claim with leave to amend to plead sufficient facts to demonstrate that the speech is constitutionally protected as opposed to a mere internal personnel grievance.[2]

### b.   Leaks to the press.

In his complaint, Plaintiff alleges that people other than Defendants "illegally leaked confidential information" to the press and Defendants ratified the illegal disclosure of privileged information. (*See* Compl. at ¶ 20.) Plaintiff further alleges that although he was prevented from saying anything publicly to clear his name because of a police department gag order, Defendants did nothing to investigate the leaks. (*See id.* at ¶ 21.) He claims that the "leaks were motivated by discrimination in violation of the First and Fourteenth Amendment and

---

[1] In his opposition, Plaintiff argues that his speech was not made as a part of his official job duties and was made as a private citizen and that the retaliation for his exercise of free speech caused adverse employment decisions. Plaintiff must allege sufficient facts in his amended complaint to sustain these claims.

[2] In his opposition, Plaintiff contends that he may state a claim under the First Amendment's right to petition the government for retaliation against a public employee for utilizing an internal grievance procedure. (Opp. Br. at 9-11.) Although there is one allusion to the right to petition in the current complaint (Compl. at ¶ 44), to the extent Plaintiff wishes to make such a claim, he may try to allege sufficient facts to sustain such a cause of action in his amended complaint. *See Rendish v. City of Tacoma*, 123 F.3d 1216, 1222 (9th Cir. 1997) (holding that, similar to allegations regarding free speech, a claim for violation of the right to petition the government must be related to issues of public concern).

6

1  retaliation in violation of the First Amendment." (*See id*. at ¶ 31.) It is not entirely clear how,
2  by these allegations, Plaintiff intends to make out a claim for violation of his First Amendment
3  rights. As currently pled, the factual allegations do not state a claim under the First
4  Amendment. To the extent Plaintiff wishes to make such a cause of action, he may try to allege
5  sufficient facts to state a claim in his amended complaint.[3]

### 2. Free Exercise of Religion.

The First Amendment of the United States Constitution protects the "free exercise" of religion. U.S. Const. Amend. I. In *Sherbert v. Verner*, the Supreme Court articulated the balancing test that has traditionally been utilized to analyze claims brought under the Free Exercise Clause. 374 U.S. 398, 403 (1963). Under this test, government actions that substantially burden a religious practice must be justified by a compelling state interest and must be narrowly tailored to achieve that interest. *Id.* Under the test, the plaintiff must first establish that the government has placed a substantial burden on his or her free exercise of religion. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994). After meeting the first element of the test, the court must determine whether some compelling state interest justifies the infringement.

The only allusion, made twice in the complaint, to Plaintiff's religion is the assertion that he is a man of Christian faith. (*See* Compl. at ¶¶ 3, 45.) Plaintiff further alleges that Defendants and those associated with them focused their investigation on hearing from officers who believed that Plaintiff compromised investigations because of his perceived Muslim religion. Plaintiff alleges that he was investigated unfairly as a result of his perceived membership in or association with the Black Muslim religion. (*See id.* at ¶¶ 19, 45, 52.)

It is unclear how Plaintiff intends to make out a claim for infringement of his right to the free practice of his religion. There is no allegation that the conduct by Defendants placed any burden at all on the practice of his Christian faith. To the extent Plaintiff tries to make out a claim that the state actors infringed upon his right to practice an incorrectly perceived religion,

---

[3] To the extent Plaintiff alleges the facts regarding leaks to the press to support a claim for violation of his privacy rights, that is addressed *infra*, section C.

7

there are no facts demonstrating that the conduct alleged in the complaint placed any burden at all on Plaintiff's hypothetical practice of the Black Muslim faith. Plaintiff also has failed to provide support for the legal contention that a state may infringe an individual's free practice of religion based on discrimination on a (mis)perceived religious affiliation.[4] As currently pled, Plaintiff fails to state a claim upon which relief may be granted tending to show that Defendants' conduct placed a substantial burden on his free exercise of religion. *See Vernon*, 27 F.3d at 1393.

### 3. Right of Association.

Plaintiff alleges that he was falsely accused and improperly investigated for interfering with a criminal investigation because of his perceived association with the Black Muslim Bakery. (*See* Compl. at ¶¶ 10, 17, 19, 20, 23, 24, 30, 45.)

"'[I]mplicit in the right to engage in activities protected by the First Amendment' is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Boy Scouts of America v. Dale*, 530 U.S. 640, 647 (2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). The right to free association is "crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas." *See id.* at 647-48 (citing *Roberts*, 468 U.S. at 622 (stating that protection of the right to expressive association is "especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority")). In order to determine whether a group is protected by the First Amendment's expressive associational right, courts must determine whether the group engages in "expressive association." *Id.* at 648. "The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private." *Id.*

---

[4] Plaintiff relies on the authority in the context of discrimination in the context of claims made under the Americans with Disabilities Act and Title VII. (*See* Opp. Br. at 6-7.) The perception theory of liability clearly applies in the those contexts, but there is no authority that such a theory has a place in the constitutional arena.

8

Similar to Plaintiff's claims for infringement of his right to free exercise of his religion, it is unclear from the complaint how Plaintiff intends to make out a claim for infringement of his right to association with a group he was mistakenly associated with.  There can be no inference from the allegations made in the current complaint that his rights to associate with the Black Muslim Bakery were infringed if he did not actually associate, or wish to associate, with the group.  Again, there is no authority that the theory of being "perceived as" a part of a group, concepts imported from the Americans with Disabilities Act and Title VII context, applies in the constitutional analysis.  Further, there is no allegation that the Bakery was engaged in expressive association and no assertion that there was any impairment of Plaintiff's right to share in the group's expressive association.  It is unclear to the Court how Plaintiff intends to make out a claim for interference with his right to expressive association, considering that the facts are not sufficiently developed in the complaint.  As currently pled, Plaintiff fails to state a claim upon which relief may be granted tending to show that Defendants' conduct placed a substantial burden on his free exercise of his right to association.  Should Plaintiff wish to make out a claim that he was somehow precluded from his right to associate with the Black Muslim Bakery's expressive, rather than violent, conduct, he may attempt to do so in an amended complaint.

**C.    Motion to Dismiss Claims for Relief Under the Fourth and Ninth Amendments for Violation of Privacy Rights.**

Plaintiff alleges that he was deprived of his right to privacy guaranteed by the Fourth and Ninth Amendments.  (*See* Compl. at ¶ 44.)  Plaintiff alleges that the leaks of information pertinent to his investigation "interfered with [his] right to privacy in violation of the United States Constitution and state law."  (*Id*. at ¶ 31.)

"Information falls within the ambit of constitutional protection when an individual has a legitimate expectation ... that it will remain confidential while in the state's possession and that expectation outweighs the public need for disclosure." *Orozco v. County of Monterey*, 941 F. Supp. 930, 937 (N.D. Cal. 1996) (citations omitted).  In his opposition, Plaintiff argues that he had a legitimate expectation of privacy in his personnel records.  (Opp. Br. at 15, citing California cases).  However, the complaint does not allege that the press improperly received

9

1    information about Plaintiff's personnel records.  The current complaint fails to state the type or
2    content of the information disclosed in the leaks.  Although there is a recognizable
3    constitutional right to privacy in some personal information, Plaintiff fails to allege sufficient
4    details to ascertain whether the alleged disclosures fall within its scope.  *See In re Crawford*,
5    194 F.3d 954, 958 (9th Cir. 1999) (finding that the indiscriminate public disclosure of social
6    security numbers accompanied by names and addresses may implicate the constitutional right to
7    informational privacy, but the right is not absolute).  Should Plaintiff wish to make out a claim
8    that his rights to privacy of constitutionally protected personal information were violated, he
9    may attempt to do so in an amended complaint.

**D.     Motion to Dismiss Claims for Relief Under the Fourteenth Amendment.**

**1.     Equal Protection.**

Defendants move to dismiss Plaintiff's claim under the Fourteenth Amendment for violation of the equal protection of the law on the basis that the complaint fails to set out facts sufficient to state a claim upon which relief can be granted.  However, Plaintiff does allege that the investigations done by the Oakland Police Department were compromised by discriminatory motive.  (*See* Compl. at ¶¶ 18, 19.)  In *Fuller v. City of Oakland*, the Ninth Circuit found that viewing the evidence most favorably to Plaintiff, the district court erred by entering a directed verdict against Plaintiff on a claim for violation of equal protection of the laws with regard to an allegedly discriminatory police investigation of sexual harassment charges.  47 F.3d 1522, 1535 (9th Cir. 1995).  In *Fuller*, a former Oakland police officer alleged that the underlying investigation of her sexual harassment charges was tainted by sexually-biased discrimination.  *Id.*  The court held that the officer was entitled to allow a jury to determine whether an internal investigation was deficient or tarnished by "reckless disregard of [the officer's] constitutional right not to have her investigation handled in a sexually-biased fashion."  *Id.*

Similarly here, at this procedural stage, the Court must allow the claims by Plaintiff that the investigations of him were (or were not) tainted by race-biased discrimination to proceed.  Accordingly, the Court denies Defendants' motion to dismiss the claims for violation of the equal protection of the laws under the Fourteenth Amendment.

10

### 2. Due Process.

In order to state a claim for violation of due process, some action complained of must run "afoul of state-created liberty or property interests that were subject to federal due process protection." *Stiesberg v. State of California*, 80 F.3d 353, 356 (9th Cir. 1996). "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law." *Id.* (citing *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994)).

However, in the current complaint, Plaintiff concedes that he "received no discipline for his conduct relating to the investigation of the Bailey murder." (Compl. at ¶ 38.) It is unclear whether or how Plaintiff asserts he was deprived of a cognizable property or liberty interest by some violation of due process. Although Plaintiff pleads elsewhere that he suffered damage to his reputation, such injury is not sufficient to support a claim for violation of due process. *See Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991).

As currently pled, the factual allegations do not state a claim under the Due Process Clause of the Fourteenth Amendment. To the extent Plaintiff wishes to make such a cause of action, he may try to allege sufficient facts to state a claim in his amended complaint.

### E. Motion to Dismiss Claims Under 42 U.S.C. Section 1981.

To state a claim under Section 1981, Plaintiff must allege that "(1) he ... is a member of a racial minority; (2) the Defendants intended to discriminate against [him] on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)." *See Ennix v. Stanten*, 2007 WL 2462119, *8 (N.D. Cal. Aug. 28, 2007).

Moreover, under Section 1981, supervisors may not be held vicariously liable for actions of other employees. Rather, a plaintiff must allege facts which demonstrate "an affirmative link to casually connect the actor with the discriminatory action." *Simpson v. Martin, Ryan, Andrada, & Lifter*, 1997 WL 542701, *4 (N.D. Cal. Aug. 26, 1997) (finding "[a]

1 supervisor's failure to prevent or remedy harassment is not an affirmative link making her
2 personally liable").

3 The Court did not dismiss Plaintiff's claim for equal protection of the laws based on race
4 discrimination under Section 1983. However, Plaintiff fails to oppose the motion to dismiss the
5 Section 1981 claims. Accordingly, the Court dismisses the Section 1981 claims with leave to
6 amend to state a claim upon which relief can be granted.

## CONCLUSION

8 For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART
9 Defendants' motion to dismiss with leave to amend. Plaintiff shall file an amended complaint
10 in compliance with this order by no later than July 23, 2010. Defendants shall have 20 days
11 thereafter to file their response.

12 **IT IS SO ORDERED.**

14 Dated: June 29, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE