IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERWIN LONGMIRE,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF OAKLAND, HOWARD JORDAN,<br>SEAN WHENT and DOES 1-50 inclusive,<br><br>    Defendants.<br>_____/ | No. C 10-01465 JSW<br><br>**ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANTS' MOTION TO<br>DISMISS PLAINTIFF'S FIRST<br>AMENDED COMPLAINT** |

Now before the Court is the motion to dismiss the first amended complaint filed by defendants City of Oakland, Howard Jordan, and Sean Ghent (collectively, "Defendants"). The Court finds this matter suitable for disposition without oral argument. *See* N.D. Civil L.R. 7-1(b). Therefore, the hearing set for December 3, 2010 at 9:00 a.m. is HEREBY VACATED. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

**BACKGROUND**

According to the allegations in the first amended complaint, Plaintiff Derwin Longmire, a Sergeant with the City of Oakland Police Department, was assigned to the homicide division in 2007 when he was accused by other officers of interfering with the police department's criminal investigation into the Black Muslim Bakery ("the Bakery"). (First Amended Complaint ("FAC") at ¶¶ 13-15.) Members of the Bakery had been suspected of being involved

1  in two homicides, a kidnapping, a robbery, torture, and a shooting. (*Id.* at ¶ 16.)

2  On the morning of August 2, 2007, Chauncey Bailey, a well-respected reporter who was
3  investigating the Bakery for the Oakland Post, was gunned down in Oakland. (*Id*. at ¶ 17.) As
4  Plaintiff was on call at the time, he was assigned to the homicide investigation. (*Id*.) Evidence
5  was obtained linking the Bakery to the Bailey murder and Plaintiff obtained a confession from
6  Devaundre Broussard. (*Id.* at ¶ 18.) In April 2008, Assistant Chief Howard Jordan and Lt.
7  Sean Whent commenced an Internal Affairs ("IA") investigation of Plaintiff based on
8  allegations that he had compromised the Bailey homicide investigation because of his perceived
9  religion and association with the Bakery. (*Id.* at ¶ 20.)

10  Several police officers suspected that Plaintiff compromised the investigation of the
11  Bailey murder because of his association with the Bakery. (*Id.* at ¶¶ 20-22.) Plaintiff alleges
12  that the chief and others in command positions had a history of initiating and manipulating IA
13  investigations for personal, political and discriminatory reasons and focused their investigation
14  of Plaintiff on the basis of his religion and/or association with the Bakery. (*Id.* at ¶ 23.)

15  Plaintiff also alleges that people close to the investigation illegally leaked confidential
16  information to the press which resulted in a series of front page newspaper articles alleging that
17  Plaintiff compromised the Bailey homicide investigation. Plaintiff alleges that his confidential
18  police personnel records were disclosed or caused to be disclosed by the defendant officers.
19  (*Id*. at ¶¶ 25, 34, 35.) Plaintiff alleges that he suffered harm as a result of the alleged media
20  disclosures both to his reputation and to his ability to maintain his career as a police officer.
21  (*Id.* at ¶¶ 34, 36.)

22  On May 1, 2009, both Acting Captain Sean Whent and Acting Chief Jordan
23  recommended that Plaintiff be terminated as a result of their findings that Plaintiff had
24  intentionally compromised the Chauncey Bailey murder investigation. (*Id.* at ¶ 37.)

25  On July 9, 2009, Plaintiff, through his attorney, responded to the findings and
26  complained that the justification for his recommended termination was "based on numerous due
27  process violations and unlawful discrimination." (*Id.* at ¶ 38.)

28

1   In response to Plaintiff's lawyer's correspondence of July 9, 2009, Plaintiff alleges
2   Defendants placed him on administrative leave instead of returning him to work and, in
3   retaliation for his complaints, attempted to use their more recent investigation as a bargaining
4   chip to obtain a release of liability from Plaintiff in return for allowing him to return to work.
5   (*Id.* at ¶ 40.) After several more correspondences, Plaintiff was ordered returned to work on
6   December 23, 2009 and was served with a notice of a proposed 20-day suspensions for alleged
7   misconduct relation to the more recent investigation. (*Id.* at ¶¶ 41-44.) Plaintiff alleges that, as
8   a result of the unlawful disclosure of confidential personnel information to the press,
9   compounded with his administrative leave, Plaintiff suffered irreparable harm to his career and
10  reputation. (*Id.* at ¶ 45.)

11  On June 29, 2010, this Court granted in part and denied in part Defendants' motion to
12  dismiss the original complaint. Plaintiff submitted a first amended complaint on July 22, 201-
13  alleging a cause of action for violation of 42 U.S.C. § 1983 against the individual officers for
14  violating his right to petition and freedom of speech, guaranteed by the First Amendment, his
15  right to privacy guaranteed by the Fourth Amendment, and his right to equal protection
16  guaranteed by the Fourteenth Amendment. Plaintiff alleges he was targeted because he was
17  perceived to be a member of the Black Muslim religion and/or was associated with the Bakery.

18  Plaintiff alleges a second cause of action against the City of Oakland for municipal
19  liability for violation of 42 U.S.C. § 1983, and a third cause of action against the City for
20  violation of 42 U.S.C. § 1981 based on disparate treatment motivated by Plaintiff's race and
21  perceived association with the Black Muslim religion.

22  The Court will address additional facts as necessary in the remainder of this order.

## ANALYSIS

**A.    Legal Standards Applicable to Motion to Dismiss.**

25  A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the
26  pleadings fail to state a claim upon which relief can be granted. The complaint is
27  construed in the light most favorable to the non-moving party and all material allegations in the
28  complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The

3

court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the grounds of his entitlement to relief." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (internal brackets and quotations omitted). The pleading must not merely allege conduct that is conceivable. Rather, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**B.    Motion to Dismiss Claims Under the First Amendment.**

In his amended complaint, Plaintiff alleges that, through his attorney on July 9, 2009, he responded to the findings and evidence used to support his termination and "complained that the justification to terminate him was based on numerous due process violations and unlawful discrimination." (FAC at ¶ 38.) Plaintiff further alleges that he was retaliated against and placed on administrative lease instead of returning him to work as a result of his complaints of due process violations and unlawful discrimination. (*Id.* at ¶ 40.)

A First Amendment retaliation claims against a government employer involves

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

The threshold and "essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Desrochers v. City of San Bernadino*, 572 F.3d 703, 709 (9th Cir. 2009) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Such an "inquiry is purely a question of law." *Eng*, 552 F.3d at 1070; *see also Connick*, 461 U.S. at 148 n.7 ("The

4

inquiry into the protected status of speech is one law, not fact"). "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995).

First, the Court must look at the content of the speech to determine whether it involves "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (citation omitted). Whether a public employee's speech or expressive conduct involves a matter of public concern depends upon the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. A public employee's speech deals with a matter of public concern when is "can be fairly considered as relating to a matter of political, social, or other concern to the community." *Voigt v. Savell*, 70 F.3d 1552, 1559 (9th Cir. 1995). "Speech that deals with 'complaint over internal office affairs' is not protected when it is not relevant to the public's evaluation of a governmental agency's performance." *Nunez v. Davis*, 169 F.3d 1222, 1227 (9th Cir. 1999) (quoting *Connick*, 461 U.S. at 149). "[S]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley*, 705 F2d at 1114): *see also Connick*, 461 U.S. at 154 (stating that speech limited to "an employee grievance concerning internal policy" is unprotected). The same would be true of "speech that relates to internal power struggles within the workplace," and speech which holds no interest "beyond the employee's bureaucratic niche." *Desrochers*, 572 F.3d at 710 (quoting *Tucker v. Cal. Dep't of Education*, 97 F.3d 1204, 1210 (9th Cir. 1996) (citations omitted)).

Although not all employee grievances amount to matters of public concern, there "is a significant distinction between complaints of a poor working relationship with one's superior and complaints involving on-the-job ... anti-Semitism, ... discrimination, and allegations of

5

racial and gender bias." *Id.* at 711 n.7 (citing *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009); *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1201 (9th Cir. 2000)); *see also Eng*, 552 F.3d at 1072 (holding that communications on matter relating to the functioning of government are matters of inherent public concern); *Huppert v. City of Pittsburgh*, 574 F.3d 696, 704 (9th Cir. 2009) (holding that unlawful conduct by a government employee is a matter of public concern). Proceedings before an administrative tribunal constitute a matter of public concern "if they bring to light potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004) (citations omitted). In *Cochran*, the court held that, although related to complaints over internal affairs, the public employee's speech related to issues of public concern because the "nature of the speech was conducive to racial and gender tension" having a tendency to disrupt the department and which are therefore "matters which are relevant to the public's evaluation of its police department." *Cochran*, 222 F.3d at 1200-01.

As opposed to the allegations contained in the original complaint, now Plaintiff alleges that the content of his speech related to alleged due process violations and discrimination against him. (FAC at ¶ 38.) Unlike an ordinary internal grievance, this type of speech may have had a tendency to disrupt the department and therefore become a matter of public concern. *See Desrochers*, 572 F.3d at 710; *Cochran*, 222 F.3d at 1200-01. In addition, a claim for violation of the right to petition the government must be supported by factual allegations that the claim was related to issues of public concern. *See Rendish v. City of Tacoma*, 123 F.3d 1216, 1222 (9th Cir. 1997). Because Plaintiff has now alleged that the content of his speech of July 9, 2009 was premised upon alleged constitutional dimension based upon an allegation that he was discriminated against, the Court DENIES the motion to dismiss Plaintiff's retaliation claim under the First Amendment at this procedural stage.

**C.     Motion to Dismiss Claim Under the Fourth Amendment.**

In his original complaint, Plaintiff alleged that people other than Defendants "illegally leaked confidential information" to the press and Defendants ratified the illegal disclosure of privileged information. (*See* Complaint at ¶ 20.) In his amended complaint, Plaintiff alleges

6

that "[b]y process of elimination no one else [beside the individual officer defendants] could have leaked this information to the press" and that the individual officer defendants "disclosed or caused to be disclosed the documents or the information contained therein to the press in violation of California law and Sgt. Longmire's right to privacy under the Fourth Amendment." (FAC at ¶¶ 3, 34.)

"Information falls within the ambit of constitutional protection when an individual has a legitimate expectation ... that it will remain confidential while in the state's possession and that expectation outweighs the public need for disclosure." *Orozco v. County of Monterey*, 941 F. Supp. 930, 937 (N.D. Cal. 1996) (citations omitted). Although there is a recognizable constitutional right to privacy in some personal information, such a right is not absolute. *See In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (finding that the indiscriminate public disclosure of social security numbers accompanied by names and addresses may implicate the constitutional right to informational privacy, but the right is not absolute). Because at this stage in the litigation, the Court cannot ascertain the legitimacy of Plaintiff's claimed privacy interest and weigh that expectation of privacy against the public need for disclosure, the Court DENIES Defendants' motion to dismiss Plaintiff's claim for violation of his privacy rights under the Fourth Amendment. *See Orozco*, 941 F. Supp. at 937.

**D.    Motion to Dismiss Claim Under 42 U.S.C. § 1981.**

The Court has already found that Plaintiff's claim under 42 U.S.C. § 1981 ("Section 1981") based on race discrimination may proceed. The remaining question is whether Plaintiff may proceed on this claim on the theory that he faced discrimination based on his "perceived association with the Black Muslim religion." (FAC at ¶ 60.)

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. "Although Section 1981 does not itself use the word 'race,' the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168

1  (1976)). Based on the history of Section 1981, the Supreme Court held that it was intended "to
2  protect from discrimination identifiable classes of persons who are subjected to intentional
3  discrimination solely because of their ancestry or ethnic characteristics." *Id.* at 613. Section
4  1981 "reaches discrimination against an individual because he or she is genetically a part of an
5  ethnically and physiognomically distinctive sub-grouping of *homo sapiens*." *Id.* (citation
6  omitted).

7  Section 1981 does not, however, prohibit discrimination based solely on religion. *See*
8  *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968) (holding that Section 1982, which
9  differs only in that it requires a citizenship, deals only with racial discrimination and does not
10 address itself to discrimination on the grounds of religion or national origin); *see also Estate of*
11 *Shelia Williams-Moore v. Alliance One Receivables Management, Inc.*, 335 F. Supp. 2d 636,
12 647 n.4 (M.D. N.C. 2004) (citing *St. Francis* and holding that "to the extent that Plaintiff's
13 section 1981 claim is in part based on allegations of gender and religion discrimination,
14 Plaintiff has failed to state a claim against Defendants under 42 U.S.C. § 1981 as to these forms
15 of discriminatory treatment"); *but cf Leblanc-Sternberg v. Fletcher*, 781 F. Supp. 261, 267-68
16 (S.D.N.Y. 1991) (Jewish plaintiffs' claims deemed cognizable under Section 1981 because of
17 common ancestry and consideration of Jews as a race); *see also St. Francis* (finding that at the
18 time Section 1981 passed, Jews were considered a race and holding that "[b]ased on the history
19 of § 1981, we have little trouble in concluding that Congress intended to protect from
20 discrimination identifiable classes of persons who are subjected to intentional discrimination
21 solely because of their ancestry or ethnic characteristics.")

22 As there is no cognizable claim under Section 1981 for discrimination based on religion,
23 Plaintiff has failed to state such a claim. Although his claim for race discrimination under
24 Section 1981, the Court GRANTS Defendants' motion to dismiss the Section 1981 claim based
25 on Plaintiff's perceived religion without leave to amend.

26
27
28

8

**E.     Motion to Dismiss Equal Protection Claim Based on Perceived Religion.[1]**

In their first motion to dismiss, Defendants sought to dismiss Plaintiff's claim under the Fourteenth Amendment for violation of the equal protection of the law on the basis that Plaintiff failed to state a claim upon which relief can be granted. However, the Court has already found that Plaintiff may proceed on this claim with respect to his allegations of differential treatment based on race.

However, Plaintiff also seeks to state a claim for violation of the equal protection of the law on the basis that Plaintiff was denied equal treatment on the basis of his perceived religion. In order to state a claim for violation of the equal protection of the laws under the Fourteenth Amendment, Plaintiff must allege facts demonstrating that he was treated differently from others because of his religion. *See Thornton v. City of St. Helena*, 425 F.3d 1158, 1166 (9th Cir. 2005). Although there may be sufficient factual allegations to assert a discrimination claim under Title VII based on the perception of Plaintiff as a member of a certain religion, neither Plaintiff nor the Court have found any authority to support the claim under a constitutional rubric. As the Court has already found, there is no authority for the perception theory of liability in the constitutional arena. (*See* Order dated June 29, 2010 at 8 n.4.) Accordingly, the Court again GRANTS Defendants' motion to dismiss the equal protection claim under the perceived religion theory without leave to amend, but not as to the claim under a theory of race discrimination.

**F.     Motion to Dismiss Claims Against the City of Oakland.**

Because there remain claims against Defendants under Section 1981 and the Equal Protection Clause based on race, and potential constitutional claims under the First and Fourth Amendments, the Court cannot dismiss the claims against the City of Oakland at this procedural stage. Accordingly, Defendants' motion to dismiss the municipal claims is DENIED.

---

[1] In his amended complaint, Plaintiff abandons his claims for violations of the First Amendment right to free speech and free association based on the allegedly incorrect perception that he was a Black Muslim.

9

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss Plaintiff's first amended complaint without leave to amend. The initial case management conference shall remain on calendar on Friday, November 12, 2010. Due to the timing of the issuance of this order, the parties' joint case management statement shall be filed no later than Monday, November 8, 2010.

**IT IS SO ORDERED.**

Dated: November 2, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE