MICHAEL W. FOSTER (State Bar No. 127691)
mfoster@fosteremploymentlaw.com
MADELYN G. JORDAN-DAVIS (State Bar No. 181771)
mjd@fosteremploymentlaw.com
C. CHRISTINE MALONEY (State Bar No. 226575)
cmaloney@fosteremploymentlaw.com
FOSTER EMPLOYMENT LAW
3000 Lakeshore Avenue
Oakland, California  94610
Telephone: (510) 763-1900
Facsimile: (510) 763-5952

BARBARA PARKER, City Attorney (State Bar No. 069722)
RANDOLPH W. HALL, Chief Assistant City Attorney (State Bar No. 080142)
VICKI A. LADEN, Supervising Deputy City Attorney (State Bar No. 130147)
CHRISTOPHER KEE, Deputy City Attorney (State Bar No. 157758)
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California  94612
Telephone: (510) 238-7686
Facsimile: (510) 238-6500

Attorneys for Defendants,
CITY OF OAKLAND, HOWARD JORDAN
and SEAN WHENT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCSICO DIVISION

| | |
|---|---|
| DERWIN LONGMIRE,<br><br>      Plaintiff,<br><br>vs.<br><br>CITY OF OAKLAND, HOWARD JORDAN, SEAN WHENT, and DOES 1-50, inclusive,<br><br>      Defendant. | Case No. C 10-01465 JSW<br><br>(42 U.S.C. §§ 1981 and 1983)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Date: December 9, 2011**<br>**Time: 9:00 a.m.**<br>**Dept: Courtroom 11, 19th Floor**<br>**Judge: Hon. Jeffrey S. White**<br><br>Date Action Filed:  April 7, 2010<br>Trial Date:  February 27, 2012 |

**F O S T E R** e m p l o y m e n t l a w<br>3000 Lakeshore Avenue<br>Oakland, California 94610

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................2

II. STATEMENT OF FACTS ......................................................................5

    A.  THE PARTIES.................................................................................5

    B.  LONGMIRE'S INTERACTIONS WITH THE BAKERY ...............6

    C.  CHAUNCEY BAILEY'S MURDER ..............................................7

    D.  LONGMIRE AND OPD COME UNDER INTENSE MEDIA SCRUTINY ...............8

    E.  OFFICER JESSE GRANT'S COMPLAINT...................................9

    F.  THE ADMINISTRATIVE INVESTIGATIONS ...........................9

    G.  PROPOSED DISCIPLINE ...........................................................10

    H.  THE MEDEIROS INVESTIGATION ..........................................12

III. LEGAL ARGUMENT AND ANALYSIS .............................................13

    A.  SUMMARY JUDGMENT LEGAL STANDARD ........................13

    B.  LONGMIRE'S RACE DISCRIMINATION CLAIMS  FAIL AS A MATTER OF LAW ...............13

        1.  Summary Judgment Standards in Discrimination Cases ................................13

            a.  Longmire Cannot Establish That He Suffered an Adverse Employment Action...............14

            b.  Longmire Cannot Prove That He Was Subjected To Less Favorable Treatment Because of His Race...............15

                i.  Longmire's Speculative Beliefs Cannot Establish Discriminatory Motivations...............15

                ii.  Non-Biased Administrative Investigations ...............16

        2.  Defendants Had Legitimate Non Discriminatory Business Reasons For Each Disputed Decision...............17

        3.  Longmire Cannot Meet His Ultimate Burden of Proof Regarding Pretext ...............17

**FOSTERemploymentlaw**
3000 Lakeshore Avenue
Oakland, California 94610

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1

**FOSTER**employment**law**
3000 Lakeshore Avenue
Oakland, California 94610

**TABLE OF CONTENTS** (Cont'd)

Page

4. Longmire Cannot Establish that Defendant Jordan Personally Engaged in Discrimination Against Him ................................................................18

5. Longmire Cannot Establish That Defendant Whent Personally Engaged in Discrimination Against Him ........................................................19

C. LONGMIRE'S FOURTH AMENDMENT INVASION OF PRIVACY CLAIM FAILS AS A MATTER OF LAW ................................................19

1. Defendants Are Not Liable for Disclosure of Longmire's Private Information ................................................................................................19

2. Longmire Did Not Have a Reasonable Expectation of Privacy ....................21

D. LONGMIRE'S FIRST AMENDMENT CLAIM LACKS LEGAL MERIT AND SHOULD BE SUMMARILY DISMISSED ....................................................22

1. Longmire Cannot Establish That He Engaged In Protected Speech................22

a. Longmire's First Amendment Claim Fails Because He Did Not Speak As a Private Citizen.................................................................23

2. Longmire Did Not Suffer Adverse Action Because of the July 9, 2009 Letter ............................................................................................................23

F. LONGMIRE HAS FAILED TO DEMONSTRATE THAT HE SUFFERED CONSTITUTIONAL HARM ..........................................................................24

IV. CONCLUSION.................................................................................................24

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Bauer v. Sampson*, 261 F.3d 775 (9th Cir. 2001) ................................................. 22

5

*Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996)........................... 16

6

*Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) ........................... 14, 18

7

*Celotex Corp. v. Catrett, 477 U.S. 317 (1986)* ................................................. 13

8

*City of Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)................... 24

9

*Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)........................... 22

10

*Cornwall v. Electra Central Credit Union*, 439 F.3d 1018 (9th Cir. 2006) ...................... 15

11

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003)........................................... 22

12

*Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285 (9th Cir. 1987)........................... 13

13

*Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) ................................................. 23

14

*Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006) ........................... 23

15

*Getz v. Boeing Co.*, 2011 U.S. App. LEXIS 15877 (9th Cir. 2011) ...................... 20

16

*Higgins v. Gonzales* 481 F.3d 578 (8th Cir. 2007) ........................................... 14

17

*In Re Crawford*, 194 F.3d 954 (9th Cir.1999.) ................................................. 21

18

*Johnson v. Multnomah County*, Or., 48 F.3d 420 (9th Cir. 1995) ...................... 22

19

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) ........................................... 19

20

*Joseph v. Leavitt*, 465 F.3d 87 (2d Cir. 2006)................................................. 14

21

*Lewis v. Conn Dept. of Corrections*, 355 F. Supp. 2d 607 (D. Conn. 2005) ................... 14

22

*McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1983)................................... 22

23

*National Treasury Employees Union v. U.S. Dept. of the Treasury*, 25 F.3d 237 (5th Cir. 1994)..... 21

24

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075 (9th Cir. 1996).................................... 20

25

*Orozco v. County of Monterey*, 941 F.Supp. 930 (N.D. Cal. 1996)........................... 21

26

*Patterson v. McLean Credit Union, 491 U.S. 164* ........................................... 13

27

*Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691 (7th Cir.2006) ............................... 18

28

**FOSTER** employment law
3000 Lakeshore Avenue
Oakland, California 94610

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES** (Cont'd)

**Page**

**Cases**

*Quintanilla v. City of Downey*, 84 F.3d 353 9th Cir. (1996) ............................................... 24

*Radford v. Union Here Local 2*, 2011 U.S. Dist. LEXIS 70159 (N.D. Cal. 2011) ........................... 16

*Reeves v. Sanderson Plumbing Products, Inc*. 530 U.S. 133 (2000)............................................ 13, 14

*Sischo-Nownejad v. Merced Community College District*
   934 F.2d 1104, 1110, fn.7 (9th Cir. 1991)................................................................ 13

St. *Mary's Honor Center v. Hicks*, 509 U.S. 502 n.1 (1993)................................................. 13

*Stewart v. Rutgers, The State University*, 120 F.3d 426 (3d Cir. 1997) ................................... 13

*Strother v. University of S. Cal. Permanente Med. Group* 79 F.3d 859 (9th Cir. 1996) ................... 14

*Sweeny v. Ala. Alcoholic Beverage Control Bd.*, 117 F. Supp. 2d 1266 (M.D. Ala 2000)................. 18

*Thorton v. City of St. Helena*, 425 F.3d 1158 (9th Cir. 2005) ........................................... 15

*Villiarimo v. Aloha Island Air*, Inc.281 F.3d 1054 (9th Cir. 2002) .................................... 18

**Statutes**

*Fed. R. Civ. P. 56* ...................................................................................... 13

**FOSTER**employment**law**
3000 Lakeshore Avenue
Oakland, California 94610

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that on December 9, 2011 at 9:00 a.m, or as soon thereafter as counsel can be heard in Courtroom 11, 19th floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 95814, Defendants City of Oakland, Howard Jordan and Sean Whent will move the Court as follows:

That the Court, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, enter summary judgment in favor of Defendants and against Plaintiff Derwin Longmire on all claims brought against Defendants in his First Amended Complaint For Damages and Injunctive Relief, upon the grounds that no genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law. Alternatively, if for any reason summary judgment cannot be had, that the Court enters a partial summary judgment pursuant to Rule 56(d). This motion is based upon this notice of motion, the accompanying Memorandum of Points and Authorities, the Declarations of Howard Jordan, Sean Whent, John Porbanic, Wendell "Pete" France, Jesse Grant, Andre Rachal and Madelyn Jordan-Davis, the accompanying Exhibits, and all pleadings and papers on file in this action, and such other matters as may be presented to the Court.

## STATEMENT OF THE ISSUES

1. Do the management decisions challenged by Longmire (an investigation, paid administrative leave, and a discipline recommendation) meet the definition of an "adverse employment action" as a matter of law?

2. Is Longmire's speculation of a racial motive for the challenged management decisions sufficient to raise an inference of discrimination and satisfy a prima facie case of discrimination?

3. Does the record reflect specific and substantial evidence that the reasons for the challenged management decisions were a pretext for racial discrimination against Longmire?

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

FOSTERemploymentlaw
3000 Lakeshore Avenue
Oakland, California 94610

4.      Is Longmire's speculation that Defendant Jordan and/or Defendant Whent revealed the fact of his placement on paid administrative leave to the press sufficient to overcome summary judgment on his claim for privacy deprivation?

5.      Did Longmire have a reasonable expectation of privacy in his paid leave status when he admits the public has a right to know if police officers are exercising integrity and good morals and he permitted his attorney to repeatedly discuss his employment status in the press?

6.      Is an employee who responds to a notice of proposed discipline by his employer speaking as a private citizen on a matter of public concern?

7.      Does the record reflect specific and substantial evidence that Longmire's maintenance on paid administrative leave was a pretext for having engaged in protected speech?

8.      Does the record reflect a genuine issue of fact that Defendant Jordan and Defendant Whent personally participated in each of the alleged civil rights violations?

9.      Can this lawsuit be maintained against Defendant City where there is no genuine issue as to any constitutional deprivation?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case arises out of one of the most notorious murders in the City of Oakland.  The events that followed are well known in the Bay Area and across the country.  On August 2, 2007, Chauncey Bailey, a well-respected Oakland journalist was gunned down in broad daylight in downtown Oakland.  By that afternoon, it was suspected that members of Your Black Muslim Bakery ("Bakery") were responsible for the slaying.  Plaintiff, Sergeant Derwin Longmire ("Longmire"), a veteran homicide detective, was assigned to lead the Oakland Police Department's ("OPD") homicide investigation into the killing of Mr. Bailey.

On August 3, 2007, Devaugndre Broussard, a handyman at the Bakery, confessed to the murder.  Broussard's in-custody confession came on the heels of his being allowed to spend several minutes – unsupervised and undocumented – with Bakery leader Yusef Bey IV ("Bey IV").  This

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

FOSTER employment law
3000 Lakeshore Avenue
Oakland, California 94610

F O S T E R employment law
3000 Lakeshore Avenue
Oakland, California 94610

1  investigative strategy was publicly criticized by Broussards's attorney who challenged the validity of

2  Broussard's confession and released Longmire's investigation file to the press. A media firestorm

3  ensued.  Convinced that the Bakery's handyman did not act alone, the media persistently criticized

4  the Department's efforts to bring Bey IV to justice[1].  Nevertheless, OPD very publically supported

5  Longmire's performance as an officer in the Department.

6          In April 2008, Defendant Howard Jordan, OPD's Assistant Chief of Police, received an

7  internal complaint concerning Longmire's relationship with Bey IV, his investigatory conduct, and

8  potential interference with open criminal investigations involving Bey IV.  Jordan referred the matter

9  to Internal Affairs for investigation and later, to ensure objectivity, former Chief Wayne Tucker

10  referred it to an outside investigator.  In April 2009, two outside investigations separately concluded

11  that Longmire compromised the Bailey investigation.  Following receipt of the outside

12  investigations, Jordan sustained findings of misconduct, placed Longmire on paid administrative

13  leave, and subsequently recommended his termination to the City Administrator.  However, after

14  Longmire exhausted his pre-termination due process rights (i.e. a Skelly hearing), Jordan concurred

15  with the Skelly Officer's findings and later withdrew his recommendation for termination.

16  Longmire ultimately received no discipline in connection with the Bailey investigation.  Longmire

17  remains continuously employed by OPD with no loss of position, pay or rank.

18          Certainly, Longmire weathered a storm of public controversy.  However, this often comes

19  with the territory when you are a lead homicide investigator for a major municipality.  In this case,

20  Longmire seeks to blame the City, Assistant Chief Jordan and Lt. Sean Whent for the scrutiny he

21  experienced and alleges a variety of civil rights violations arising out of his role in the Bailey

22  investigation.  First, Longmire claims that Defendants discriminated against him based on race by

23  initiating the Internal Affairs investigation, sustaining findings of misconduct, placing him on paid

24  administrative leave, and recommending termination.  Second, Longmire claims that Defendants

25  violated his constitutional privacy rights by supposedly leaking information to the press about his

26

27  ───────────────

28  [1] On June 9, 2011, Bey IV and Mackey were found guilty of the murder of Chauncey Bailey.
    Broussard accepted a plea deal and pled guilty to voluntary manslaughter.

3

---

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**F O S T E R** employment law
3000 Lakeshore Avenue
Oakland, California 94610

1    placement on paid administrative leave.  Third, Longmire contends that he was retaliated against by

2    being kept on paid administrative leave after Assistant Chief Jordan decided to withdraw the

3    termination recommendation because Longmire exercised his right to free speech during the Skelly

4    process.  *See* FAC ¶¶ 1-4.

5           By his own admission, Longmire's race discrimination claims are based solely on his

6    ***subjective belief*** that he would have never been suspected of wrongdoing had he not been black,

7    bald and a wearer of bowties.  (Longmire Dep. 11:14 – 12:5; 15:10-15; 19:14 – 20:7; 59:6 – 60:7;

8    (71:25 – 73:10.)  Ironically, numerous officers in the OPD substantially fit the description that

9    Longmire now claims as the basis for discrimination against him.  Longmire's unsupported

10   conclusion is nothing more than an attempt to trivialize the legitimate non-discriminatory concerns

11   that were raised about his investigatory conduct and admitted relationship with a murder suspect,

12   Bey IV, in one of the City's most high-profile killings.  As demonstrated below, Longmire's race

13   discrimination claim fails because he was never disciplined or subjected to an actionable adverse

14   employment action.  Further, there is no evidence from which a reasonable trier of fact could

15   conclude that Longmire's race was a factor in any of the challenged decisions.  Longmire's own

16   conduct– not his race – was the reason that his actions were scrutinized.

17          Longmire's privacy claim fails because the allegation that Defendants Jordan and/or Whent

18   leaked Longmire's placement on paid administrative leave to the press is entirely speculative.

19   (Longmire Dep. 101:20-23; 102:21 – 103:21.)  Longmire has no evidence that either Defendant took

20   any such action.  Moreover, as soon as Longmire was placed on paid administrative leave, his own

21   attorney gave television and print interviews on the subject.  At that point, Assistant Chief Jordan

22   had not formed any disciplinary recommendation.   The privacy claim fails for the further reason that

23   Longmire concedes the public has a right to know what occurs in a police department and whether

24   its officers are performing with integrity and good morals.  (Longmire Dep. 151:6 – 152:23.)  In

25   deposition, Longmire justified his attorney's frequent media interviews about the administrative

26   investigations and personnel actions based on the public's right to know.  Accordingly, Longmire

27   had no reasonable expectation of privacy in the information he claims was "leaked."

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Finally, Longmire's First Amendment retaliation claim fails because he did not engage in protected speech.  The speech at issue involves a written response to the termination recommendation prepared by Longmire's attorney and submitted to the Skelly Officer the day before the Skelly hearing.  (Longmire Dep. 64:17 – 66:7, Ex. 11.)  The written Skelly response was submitted in the course of Longmire's official duties to respond to misconduct allegations and not as a private citizen.  The written Skelly response was also not speech on a matter of public concern as it dealt with the employee' own discipline.  Even if the Skelly response could be deemed protected speech, there is no evidence that Longmire suffered an actionable adverse employment action.  He complains that he was left on *paid* administrative leave longer than he felt was appropriate.  Paid administrative leave is not an adverse action.  Further, there is no evidence that the maintenance of Longmire on administrative leave was related in any way to the Skelly response.  Rather, Longmire was maintained on paid administrative leave because he was also the subject of a second, unrelated Internal Affairs investigation that was still pending.  When that process was concluded, Longmire was returned to active duty.  Accordingly, there is no evidence from which a reasonable trier of fact could conclude that the duration of Longmire's paid administrative leave was causally connected to the alleged speech.

For these reasons, and those elaborated upon in greater detail below, Defendants respectfully request that this Court grant this motion for summary judgment, or in the alternative, partial summary judgment on each of the causes of action alleged against in the First Amended Complaint, and dismiss this lawsuit in its entirety.

## II.   STATEMENT OF FACTS

### A.   THE PARTIES

Defendant OPD is one of the most diverse law enforcement agencies in the nation and is led by an African-American Chief of Police, Anthony Batts, and an African-American Assistant Chief of Police, Defendant Howard Jordan.  (Jordan Dec. ¶19.)  Defendant Jordan was hired by OPD in August 1988 and rose through its ranks to his current position, Assistant Chief of Police, which he has held since July 2007.  (Jordan Dec. ¶ 1.)  For eight months, between February and October 2009,

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

FOSTER employment law
3000 Lakeshore Avenue
Oakland, California 94610

1    Jordan also held the position of Acting Chief of Police after Chief Wayne Tucker resigned.  (Jordan

2    Dec. ¶ 2.)  Defendant Sean Whent is a Lieutenant with OPD and has worked for the Department

3    since May 1994.  (Whent Dec. ¶ 1.)  Whent was a Lieutenant in the Department's Internal Affairs

4    Division between 2005 and 2010. (Whent Dec. ¶¶ 1, 7, 22.) Whent was Acting Captain of IA

5    between 2009 and 2010.  (*Id*.; Whent Dep. 69:24-70:1, 250:20-251:1.)

6        Plaintiff Longmire, an African-American, has been employed with the Oakland Police

7    Department ("OPD") since June 1985.  (FAC 13.)  He was promoted from Police Officer to Sergeant

8    in February 1996 and has held various assignments within OPD as a Sergeant including the

9    Intelligence Division between 2002 and 2003, Investigations between 2003 and 2005, and Homicide

10   between 2005 and 2009.  (Longmire, DOJ interview, 12:7-23, 13:1-4). Longmire currently works as

11   a Sergeant in Patrol responsible for supervising a squad of eight (8) officers. (Longmire Dep.

12   153:24-154:8).

13   **B.      LONGMIRE'S INTERACTIONS WITH THE BAKERY**

14       Your Black Muslim Bakery ("the Bakery"), formerly located on San Pablo Avenue in

15   Oakland, was regarded for decades by OPD's Intelligence Section to be a dangerous criminal

16   organization.  (Rachal Dec. ¶2.)  Bakery members were suspected of a wide variety of criminal

17   activity, including welfare fraud, sex crimes, torture and murder, and were under investigation and

18   surveillance by OPD for years.  (Rachal Dec. ¶2.)  After the deaths of the Bakery's founder, Yusef

19   Bey Sr., in 2003 and his successor Antar Bey in 2005, 19 year-old Yusef Bey IV emerged as the

20   Bakery's leader.  (Rachal Dec. ¶6.)  Following Bey IV's takeover, the criminal activity and violence

21   of Bakery members appeared to escalate.  (Rachal Dec. ¶7.)  Bey IV was suspected of personal

22   involvement in the criminal vandalism of two liquor stores, fraud, assault, battery, kidnapping,

23   torture and two murders before journalist Chauncey Bailey was killed.  (Rachal Dec. ¶8.)

24       As a patrol officer in the 90's, Longmire's territory included North Oakland where the

25   Bakery was located.  (Longmire Dep. 123:16-124:6.)  Longmire was introduced to the Bakery by his

26   partner Emelington Reese.  *Id*.  Thereafter, Longmire frequented the Bakery to buy baked goods and

27   often talked and joked with prominent Bakery members.  (Longmire, DOJ interview, 40:8-18; 41:2-

28

6

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

11; 50:2-18; 51:1-6.)  By 2002 and 2003, when Longmire was assigned to be the commander of the

Intelligence Section, he had come to understand that the Bakery was a criminal enterprise and was

under active investigation and surveillance by OPD.  (Longmire, DOJ interview, 141:8-11;

Longmire Dep. 134:12-25.)  Nonetheless, Longmire continued to patronize the Bakery and did so for

years after his Patrol assignment ended.  (Longmire, DOJ interview, 74:8-18 .)

In 2005, while assigned to Homicide and the investigation of Antar Bey's murder, Longmire

met Bey IV and came to know Bey IV's mother, Daulet Bey, and other Bey family members.

(Longmire Dep. 45:11 – 47:20.)  Members of the Bey family sought out Longmire for assistance and

advice during this time.  For example, on one occasion, Longmire was given a personal tour of the

Bakery by Bey IV, who sought Longmire's advice on obtaining contracts with the City. (Longmire,

DOJ interview, 74:13-77:8.)  On another occasion, when Bey IV was under investigation for 2005

liquor store vandalisms, Daulet Bey sought out Longmire and asked him to provide mentorship to

her son because of Bey IV's increasing criminal activities.  (Longmire Dep. 45:11 – 47:20.)

Longmire concedes that a reasonable person could have concluded that he had a close relationship

with Bey IV.  (Longmire Dep. 206:11 – 208:2.)

## C.      CHAUNCEY BAILEY'S MURDER

On the morning of August 2, 2007, local journalist Chauncey Bailey was murdered in

downtown Oakland in broad daylight on his way to work.  FAC 17.  Bailey had been working on a

story involving the Bakery.  (Jordan Dec. ¶3.)  Longmire was assigned to investigate the Bailey

homicide. (FAC 17.)  By the afternoon of August 2nd, Bey IV and other Bakery members had

become suspects in the killing. (Jordan Dec. ¶3, Longmire Dep. 188:12 – 189:25.)  The Department

had previously placed a tracking device on Bey IV's car in connection with another criminal

investigation (kidnap and torture of two women) and it had revealed that Bey IV's car had been

parked outside Bailey's home the night before the murder and was at the scene of the murder within

20 minutes after it occurred.  (Jordan Dec. ¶3.)

On August 3, 2007, OPD conducted a massive pre-planned raid on the Bakery in conjunction

with its criminal investigations of Bakery members. (Jordan Dec. ¶4.)  The shot gun used to kill

**FOSTER** employment law

3000 Lakeshore Avenue
Oakland, California 94610

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Bailey and other evidence was recovered in the raid. (Jordan Dec. ¶4, FAC 18.) Bey IV, Bakery handyman Devaugndre Broussard, and others were taken into custody on a variety of charges. (Jordan Dec. ¶4.) In the process, Longmire placed Bey IV and Broussard in a room alone without recording or monitoring the conversation. (Longmire Dep. 179:10 – 180:1.) After several minutes alone with Bey IV, Broussard confessed to Bailey's murder, claiming to have acted alone. *Id.*

### D.  LONGMIRE AND OPD COME UNDER INTENSE MEDIA SCRUTINY

Broussard's attorney, LaRue Grim, promptly and publicly challenged the confession, contending it was coerced. (Jordan Dec. ¶5.) He released Longmire's homicide investigation file to the media. (Longmire Dep. 185:15-19; 194:14-19.) As a result of the file's release, Longmire and the OPD came under intense media scrutiny for the quality of the Bailey investigation and for Longmire's relationship with Bey IV. (Longmire Dep. 97:20-98:10; 178:14 – 179:9.)

A taped interview between Longmire and Bey IV, contained in the homicide file released to the media, included Bey IV's description of Longmire as a long-time patron of the Bakery and a "good supporter." (Longmire Dep. 203:24-204:2, 206:2-207:18.) The media also obtained a copy of a conversation that had been recorded between Bey IV and other suspects in the kidnap/torture case, during which Bey IV discussed details of the Bailey homicide and boasted that Longmire was protecting him from prosecution in that case. (Grant Dec. ¶10; Longmire Dep. 193:21 – 195:4; 197:22 – 200:9.)

As scrutiny into Longmire's investigation of and relationship with Bey IV intensified, Defendant Jordan publicly defended Longmire's performance. For example, in February 2008, the CBS news program "60 Minutes" ran a story on the Bailey homicide. (Longmire Dep.107:9-21.) Assistant Chief Jordan was the spokesperson for OPD. In response to the reporter's inquiry regarding Longmire's longtime relationship with Bey IV and other Bakery leaders, Jordan explained**, "I don't have any problem with Sgt. Longmire's relationship with members of the Bakery…I trust his integrity, I trust his credibility…."** (Jordan Dec. ¶6; Longmire Dep. 107:9-108:4.) In November 2008, Jordan authorized the release of a detailed letter that set out all of the reasons that the Department (up to that point) did not believe that Longmire had compromised the Bailey

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

FOSTERemploymentlaw
3000 Lakeshore Avenue
Oakland, California 94610

1    investigation. (Jordan Dec. ¶6, Ex. A; Longmire Dep. 240:16 – 242:20.)

2        **E.    OFFICER JESSE GRANT'S COMPLAINT**

3        Beginning in spring of 2007, as he was investigating a Bakery-related kidnap and torture

4    case, Officer Jesse Grant developed concerns about Longmire's relationship with members of the

5    Bakery. (Grant Dec. ¶¶5-8.)  Grant was concerned that Longmire had taken an unusually keen

6    interest in his kidnap/torture investigation. *Id.*  Grant's suspicion of a close connection increased

7    when Grant secretly obtained a videotape of Bey IV talking to other suspects while in custody in the

8    San Leandro Police Department on August 6, 2007.  (Grant Dec. ¶¶10, 11.)  In that recording, Bey

9    IV stated that Longmire was protecting him from prosecution in the Bailey murder. (*Id.*; Longmire

10   Dep. 193:21 – 195:4; 197:22 – 200:9.)  In September 2007, Grant approached Captain Loman, head

11   of the Criminal Investigations Division, to register his concern over Longmire's relationship to

12   Bakery members, including Bey IV.  (Grant Dec. ¶9.)  According to Grant, Loman reacted hostilely

13   to his expression of concern and failed to respond.  *Id.*  Grant continued to observe and review

14   evidence through late 2007 and early 2008 suggesting that Longmire had a close relationship with

15   Bey IV that would make it difficult for Longmire to objectively investigate potential criminal

16   activity by Bakery members.  (Grant Dec. ¶¶ 12-16.)  In April 2008, Grant reported his concern to

17   Assistant Chief Jordan.  (Grant Dec. ¶18.)

18       **F.    THE ADMINISTRATIVE INVESTIGATIONS**

19       Jordan realized that he was obligated by Department policy to initiate an internal affairs

20   investigation into Longmire's allegedly improper conduct.  (Jordan Dec. ¶7.) Longmire concedes

21   that Grant's allegations were serious and it was not improper for Jordan to refer them to IA.

22   (Longmire Dep. 20:8 – 21:10; 25:10 – 26:1.)  Sgt. Robert Chan, an investigator in OPD's Internal

23   Affairs Division, was initially assigned to investigate Grant's allegations.  (Whent Dec. ¶¶ 2, 3.)

24       In the fall of 2008, as media scrutiny into the murder and OPD's investigation intensified,

25   former Oakland Mayor Ron Dellums requested that the California Department of Justice conduct a

26   concurrent investigation of OPD's handling of the Bailey murder investigation.  (Porbanic Dec. ¶3.)

27   The DOJ assigned Special Agent Supervisor John Porbanic to conduct it.  *Id.*  Porbanic identified the

28

**FOSTER**employment**law**
3000 Lakeshore Avenue
Oakland, California 94610

9

FOSTERemploymentlaw

3000 Lakeshore Avenue
Oakland, California 94610

witnesses he wanted to interview and assembled and analyzed the evidence he gathered without any direction from OPD.  (Porbanic Dec. ¶¶4, 7, 9.)  OPD had also determined, shortly before DOJ's involvement, that to safeguard public confidence in the Department, the Department would turn the IA investigation over to a neutral, outside investigator.  (Whent Dec. ¶¶ 4, 5.)  OPD retained Wendell "Pete" France to finish its investigation.  (Whent Dep. 64:20-64:7; 153:16-154:6.)  France is a skilled IA investigator.  (France Dec. ¶ 1)  France received no direction from OPD on how to analyze the evidence or what conclusions to reach.  (France Dec. ¶4.)

In April 2009, the DOJ and France completed their investigations.  (Whent Dec. ¶9.)  Both investigations concluded that Longmire had compromised the investigation of the Bailey murder, probably as a result of his personal relationship with Bey IV.[2] (Porbanic Dec. ¶9, France Dec. ¶6)  Lt. Whent did not find any evidence that the reports were biased.  (Whent Dep. 107:21-23.)  He presented their findings to Assistant Chief Jordan, the Acting Chief of Police.  (Whent Dec. ¶11.)  Jordan reviewed a summary of the reports and sustained two findings against Longmire: compromising a criminal case and insubordination.  (Jordan Dec¶10, Whent Dec. ¶ 11, Ex. A).  On April 13, 2009, Jordan placed Longmire on paid administrative leave[3] pending the Department's determination of appropriate disciplinary action.  (Jordan Dec. ¶10)    Longmire's attorney, Mike Rains, protested to the media. The day after Longmire was placed on administrative leave, Rains, discussed Longmire's leave with newspaper and TV journalists, with whom he has longstanding ties. (RFA 13; Rains Dep.18:1-8; 18:20-19:6; 19:24-20:3; 20:18-21:10; 26:3-27:4, 31:12-32:1.)

### G.    PROPOSED DISCIPLINE

Upon sustained findings of misconduct, Acting Chief Jordan was responsible for recommending appropriate disciplinary action to the City Administrator, who makes a final decision

---

[2] The DOJ did not find that Lt. Joyner or Capt. Loman violated the Manual of Rules.  Porbanic Dec. ¶¶7, 10.

[3] In April 2009, when Longmire was placed on leave, the Department's practice was to place officers on leave during IA investigations or when there was a sustained finding that could lead to termination of employment.  That practice has changed under the leadership of the current Chief, Anthony Batts, who, as a cost savings measure, makes every effort to keep officers at work pending the outcome of the discipline process. (Jordan Dec. ¶20.)  )

10

on discipline after due process procedures are exhausted.  (Jordan Dec. ¶10.)  On May 1, 2009, AC

Jordan informed Sgt. Longmire that he intended to recommend to the City Administrator that

Longmire be terminated from his position as a Sergeant.  (Jordan Dec. ¶10.) Jordan based his

recommendation on the Department's Discipline Matrix, which identified termination as the

appropriate level of discipline for the sustained findings in Longmire's case. (Jordan Dep. 60:9-

61:24 )  Race played no role in the decision of Jordan, also African-American.  (Jordan Dec. ¶'s12,

18.).  Significantly, during Jordan's tenure as Acting Chief of Police (February 2009 – October

2009) four officers were terminated from the Department because of misconduct:  two Caucasian

males, one Latino male, one African-American female.  (Jordan Dec. ¶19.)  Likewise, Whent – who

also supported the recommendation to terminate Longmire – had participated in several termination

recommendations during his tenure as IA commander.  (Whent Dec. ¶22.)  Whent concurred in six

termination recommendations between January 2009 and October 2010:  one African-American

female, one African-American male (Longmire), two Latino males and two Caucasian males.  *Id.*

Race did not factor into Whent's recommendation regarding Longmire.  *Id.*

      Longmire exercised his right to a pre-termination due process Skelly hearing.  (Longmire

Dep. 92:13 – 93:14; Rains 7:17-23.)  OPD Captain Toribio was appointed as the Skelly Officer.

(Toribio Dep. 15:20 – 16:20.)  At the hearing, Longmire had an opportunity to explain why the

termination recommendation should not be accepted.  (Longmire Dep. 92:13 – 94:11.)  On July 9,

2009, attorney Mike Rains sent a letter to Captain Toribio disputing the IA findings and challenging

the imposition of discipline.  (Toribio Dep. 104:6-14, Ex. 11.)  On July 10th, Longmire and Rains

attended the Skelly hearing conducted by Captain Toribio.  (Longmire Dep. 92:13 – 93:4.)  Rains

did not, either in writing or verbally make an allegation of race discrimination during the discipline

process.  (Rains Dep. 44:4-48:25; Longmire Dep. 92:15-93:7) After reviewing the evidence, Captain

Toribio concluded that the IA and DOJ investigations were incomplete and failed to support the

findings. (Toribio Dep.  20:6 – 24:12.)  On July 23, 2009, Toribio met with Acting Chief Jordan and

informed him of his opinion that the IA findings should be changed to "not sustained" and the

termination not imposed.  (Toribio Dep. 36:13-19; Jordan Dep. 52:5-53:2.)  Jordan concurred and

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1  informed the City Administrator that he was withdrawing his recommendation for Longmire's

2  termination.  (Jordan Dep. 54:2 – 55:8.)

3      **H.**    **THE MEDEIROS INVESTIGATION**

4          Pursuant to the Department's transfer policy, Longmire was transferred from Homicide to

5  Patrol at the beginning of 2009.  (Jordan Dec. ¶14.)  In February 2009, Lt. Brian Medeiros, the new

6  Homicide commander, reviewed open files left by officers who had recently transferred out of

7  Homicide.  (Jordan Dec. ¶15.)  Medeiros identified a number of problems in approximately 10

8  homicide cases that had been assigned to Longmire and remained open.  In March 2009, Lt.

9  Medeiros referred the matter to Internal Affairs.  Internal Affairs initiated an investigation into how

10  Longmire handled the 10 cases.  ("Medeiros investigation") [4].  The Medeiros investigation was

11  pending in July 2009, at the time that Acting Chief Jordan decided to withdraw his recommendation

12  for termination for Longmire's handling of the Bailey investigation. (Jordan Dec. ¶15.)  The

13  Department maintained Longmire on paid administrative leave pending completion of the Medeiros

14  Investigation, at which time it would decide whether discipline was warranted for one or both cases.

15  (Jordan Dec. ¶15, Whent Dec. ¶18.)

16          The City Administrator concurred with Jordan's recommendation that Longmire not be

17  terminated for his role in the Bailey investigation.  (Jordan Dec. ¶13,  Longmire Dep. 169:2-20.)

18  The Medeiros Investigation resulted in sustained findings against Longmire for Performance of

19  Duty.  (Jordan Dec. ¶15.)  At that point, Defendant Whent communicated with Mike Rains,

20  Longmire's attorney, to see whether agreement could be reached on discipline for Longmire prior to

21  his returning to work.  (Rains Dep.8:5-25; 10:6-13:3, Whent Dec. ¶19.)  The Department and

22  Longmire failed to reach agreement.  (Whent Dec. ¶ ¶19-21.)  On December 23, 2009, Longmire

23  was ordered back to work.  (Jordan Dec. ¶15.)  The Department recommended a 20-day suspension

24  for the performance deficiencies identified in the Medeiros Investigation.  (Id.) After a Skelly

25  hearing, Longmire's discipline was reduced to six days.  (Longmire Dep. 172:25-173:10.)  Longmire

27          [4] Longmire does not contend in this lawsuit that the Medeiros complaint was initiated  because of his
28  race.  (Longmire Dep.163:1-164:10. )

FOSTERemploymentlaw

3000 Lakeshore Avenue
Oakland, California 94610

1    is currently in the process of appealing that determination.  (Longmire Dep. 173:11-13.)

2                          **III.   LEGAL ARGUMENT AND ANALYSIS**

3              **A.      SUMMARY JUDGMENT LEGAL STANDARD**

4              Summary judgment is properly granted when no genuine and disputed issues of material fact

5    remain, and when, viewing the evidence most favorably to the non-moving party, the movant is

6    entitled to prevail as a matter of law.  Fed. R. Civ. P. 56*; Celotex Corp. v. Catrett,* 477 U.S. 317,

7    322-23 (1986)*; Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).*

8              **B.      LONGMIRE'S RACE DISCRIMINATION CLAIMS  FAIL AS A MATTER**
               **OF LAW**
9

10                   **1.      Summary Judgment Standards in Discrimination Cases**

11             Longmire's claim for race discrimination brought under 42 U.S.C. §§1981 is evaluated under

12   the shifting burden analysis in  *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 and *Texas*

13   *Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248.  Under the shifting burden analysis the

14   plaintiff must first establish a prima facie case of discrimination: that he is a member of a protected

15   class,  (2) he was performing according to his employer's legitimate expectations, (3) he suffered an

16   adverse employment action, and (4) other employees with qualifications similar to his own were

17   treated more favorably.  *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1220 (9th Cir. 1998).

18             The burden then shifts to the employer to articulate a legitimate, nondiscriminatory business

19   reason for the contested employment decision.  In order to prevail, the plaintiff must establish that

20   the employer's articulate nondiscriminatory reason is a pretext to mask unlawful discrimination.

21   *Reeves v. Sanderson Plumbing Products, Inc*. 530 U.S. 133 (2000); St*. Mary's Honor Center v.*

22   *Hicks*, 509 U.S. 502 n.1 (1993); *Stewart v. Rutgers, The State University*, 120 F.3d 426,432 (3d Cir.

23   1997) ("Our application of the McDonnell Douglas-Burdine framework is applicable to [an]

24   allegation of racial discrimination under 42 U.S.C. §§1981 and 1983"); *Patterson v. McLean Credit*

25   *Union, 491 U.S. 164; 109 S.Ct 2363 (1989) ; Sischo-Nownejad v. Merced Community College*

26   *District,* 934 F.2d 1104, 1110, fn.7 (9th Cir. 1991).

27             The ultimate burden to prove intentional discrimination remains at all times with the plaintiff.

28
                                               13
          **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE**
                        **ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**FOSTER**employment**law**
3000 Lakeshore Avenue
Oakland, California 94610

FOSTERemploymentlaw
3000 Lakeshore Avenue
Oakland, California 94610

*Reeves*, 530 U.S. at 147-148; *Burdine*, 450 U.S. at 25.  Longmire can establish neither a *prima facie* case, nor that Defendants' legitimate reasons for investigating his conduct as a homicide detective were a pretext for race discrimination.

**a.      Longmire Cannot Establish That He Suffered an Adverse Employment Action**

Longmire's claim of disparate treatment arises out of Jordan's decision to initiate an Internal Affairs investigation.  He claims that Jordan's participation in the investigation as a witness and Jordan and Whent's decisions to (1) sustain findings of misconduct, (2) place Longmire on administrative leave, and (3) recommend Longmire's termination were discriminatory. FAC 2, 52. An adverse employment action is one that materially affects the compensation, terms, conditions or privileges of the plaintiff's employment.  *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 60 (2006).  Not every employment decision amounts to an adverse employment action. *Strother v. University of S. Cal. Permanente Med. Group* 79 F.3d 859 (9th Cir. 1996).  None of the contested actions rose to the level of finality to constitute an adverse action. Employment decisions that are not final and that are subject to modification are not adverse employment actions.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  See *Higgins v. Gonzales* 481 F.3d 578, 591 (8th Cir. 2007) (a recommendation for termination does not rise to the level of an adverse action.) Likewise, Jordan's decision  to initiate an Internal Affairs investigation was not an adverse action. *See Lewis v. Conn Dept. of Corrections*, 355 F. Supp. 2d 607, 618 (D. Conn. 2005) (noting that an internal investigation that resulted in no discipline was not an adverse action.)  Finally, Jordan's decision to place Longmire on administrative leave did not constitute an adverse employment action as a matter of law.  *See Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (holding that placement on administrative leave pending the criminal charges against plaintiff does not constitute an adverse employment action.)

Longmire, a homicide detective, was placed on administrative leave, with pay, following two separate investigations that independently concluded that he compromised the investigation into the murder of Chauncey Bailey.   At the time of the decision, Jordan was enforcing the departments

14

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

preexisting disciplinary policies in a reasonable manner.  Given the import and sensitive nature of

Longmire's position as a detective charged with the task of investigating murders, Longmire could

not reasonably expect that he would be allowed to continue with his responsibilities as a homicide

detective while he was facing charges that he had compromised the investigation into the murder of

Mr. Bailey.  See *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000) (holding that a police

officer did not suffer any 'adverse employment actions' by being placed on paid administrative leave

when he retained his job and had not been demoted or transferred to a less desirable position.)

Longmire therefore cannot establish that he suffered a final or lasting adverse action

sufficient to state a prima facie case of employment discrimination.

### b.   Longmire Cannot Prove That He Was Subjected To Less Favorable Treatment Because of His Race

An employee is subjected to disparate treatment when he or she is treated less favorably than

others who are similarly situated on account of race. *Cornwall v. Electra Central Credit Union*, 439

F.3d 1018, 1028 (9th Cir. 2006).  To prove unlawful discrimination, a plaintiff must demonstrate that

defendants acted with the intent or purpose to discriminate against the plaintiff based on membership

in a protected class." *Thorton v. City of St. Helena*, 425 F.3d 1158, 1166 (9th Cir. 2005).

### i.   Longmire's Speculative Beliefs Cannot Establish Discriminatory Motivations

Longmire's  contention that he was the victim of race-based discrimination rests on

conjecture and inferences completely unsupported  by fact.  He contends that Defendants Jordan and

Whent based their decisions on their belief that he was a "Black Muslim" and, "…, you can't be

such without being black." (FAC 2, Longmire Dep. 11:14-20; 75:24-76:25; 84:14-18.)

> "I **believe** that had I been a white guy or anything other than black I don't **think** this would have been as much of an issue.  I **think** that they would have looked high and low, and I **think** they would have been comprehensive and complete in their investigation and in their analysis of the investigation, and I **think** that **perhaps** the benefit of the doubt would have existed."

(Longmire Dep. 11:14-12:3, emphasis added.) Longmire's subjective belief, without more, is

insufficient to create a triable issue of material fact as to any discriminatory conduct by defendants

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

FOSTERemploymentlaw
3000 Lakeshore Avenue
Oakland, California 94610

FOSTER employment law
3000 Lakeshore Avenue
Oakland, California 94610

1    *Radford v. Union Here Local 2*, 2011 U.S. Dist. LEXIS 70159 (N.D. Cal. 2011).

2          The undisputed evidence in this case contravenes Longmire's contention.  Jordan did not

3    believe that Longmire was a Muslim or a member of the Bakery.  (Jordan Dep. 112:19-113:8;

4    156:21-157:14; Rains  Dep. 87:3-23. )  Likewise, Lt. Whent has never maintained any such belief.

5    (Whent Dep. 106:11-14;164:9-23; Joyner Dep. 186:9-19.) But even if Jordan had regarded him as a

6    member of the Bakery—a criminal enterprise—that would not provide evidence that he was the

7    victim of race discrimination.  Notably, during Jordan's tenure as Acting Chief of Police four

8    officers were terminated from the department because of misconduct; two Caucasians, one Latino

9    and one African American. (Jordan Dec. ¶19.)

10                      **ii.        Non-Biased Administrative Investigations**

11          Longmire contends the investigations were result-oriented: the investigators concluded that

12   he was a Black Muslim and worked backwards to substantiate their belief. (FAC 30.)  It would be

13   improper and unreasonable to infer that any alleged deficiency in either investigation was purposeful

14   or the result of racial animus.  While Longmire may feel that the administrative probes were

15   unwarranted, his belief does not create a triable issue of material fact. *Bradley v. Harcourt, Brace &*

16   *Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

17          The administrative investigations followed a complaint of possible misconduct by Longmire.

18   (Jordan Dec. ¶7.)  More than a dozen officers were interviewed during the investigations.  At the

19   start of their respective investigations,  each investigator independently identified witnesses after

20   reviewing all of the pertinent information. (Porbanic Dec. ¶7, France ¶4,)  For logistical reasons it

21   was agreed that the DOJ would interview witnesses and provide France with copies of their

22   transcripts when done (France Dec. ¶5.)  The witnesses were a racially diverse group. ( Porbanic

23   Dec. ¶8.) Neither defendant participated in directing either investigation. (Porbanic Dec.¶7) Jordan

24   was an obvious witness because he was in Longmire's chain of command.  (Porbanic Dec. ¶ 8.)

25   Whent's involvement in the Internal Affairs investigation ended when the internal affairs

26   investigation was transferred to France  (Whent Dec. ¶5.)   Although the DOJ spoke with former

27   District Attorney Tom Orloff, Deputy District Attorney Chris Lameiro and their investigators Toni

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

FOSTERemploymentlaw
3000 Lakeshore Avenue
Oakland, California 94610

1   Sal and Kathy Boyovich, the lead investigator did not interview prosecutors who were prosecuting

2   Broussard for very specific reasons which had nothing to do with Longmire's race. (Porbanic Dec.

3   ¶10-11.)   The overwhelming evidence in this case establishes that Longmire was the subject of two

4   independent, non-biased investigations. His race played no role in either investigation or their

5   conclusions.

6       **2.    Defendants Had Legitimate Non Discriminatory Business Reasons For Each**
        **Disputed Decision**

7

8       Even if Longmire could establish a prima facie claim of discrimination, which he cannot,

9   Defendants had legitimate non-discriminatory reasons for each employment decision Longmire now

10   contests.  In April 2008, Jordan was presented with an internal complaint concerning possible police

11   misconduct. (Grant Dec.¶16.)   Jordan was obligated by the Department's policy to refer the

12   complaint to Internal Affairs.  (Jordan Dec. ¶7.)    Indeed, Longmire did not find Jordan's referral

13   improper. "...I think that referring it to the internal affairs section was—**I do not feel that it was**

14   **improper for him to do that…**".(Longmire Dep. 25:10-26:1; 26:25-27:15.)

15       Jordan sustained findings that Longmire had committed misconduct after reviewing two

16   independent investigations that separately concluded that Longmire had compromised the Bailey

17   investigation. (Porbanic Dec. ¶9, Whent Dec. ¶10, France Dec. ¶6-8)  Only then did Jordan place

18   Longmire on <u>paid</u> administrative leave.  In May 2009, Whent recommended that Longmire be

19   terminated for compromising the Bailey murder investigation.  Jordan initially concurred with

20   Whent's recommendation but decided against termination following the Skelly hearing.

21       **3.    Longmire Cannot Meet His Burden of Proof to Demonstrate Pretext**

22       Longmire cannot demonstrate a genuine issue of material fact as to whether Defendants'

23   legitimate, non-discriminatory reasons for their decisions are pretextual.  In judging whether a

24   proffered reason is pretextual, courts "…only require that an employer honestly believed its reasons

25   for its actions…"  *Villiarimo v. Aloha Island Air*, Inc.281 F.3d 1054, 1063 (9th Cir. 2002); *see also*

26   *Ptasznik v. St. Joseph Hosp*., 464 F.3d 691,696. (7th Cir.2006) (holding that "an employee's

27   mistaken belief that the plaintiff's conduct  merited termination is not unlawful, so long as the belief

28

17

1   was honestly held."); *Sweeny v. Ala. Alcoholic Beverage Control Bd.*, 117 F. Supp. 2d 1266, 1272

2   (M.D. Ala. 2000) (finding that where an employer reasonably relies on a report of misconduct, the

3   discharged employee cannot demonstrate pretext merely by denying that she  engaged in alleged

4   misconduct.)

5          Jordan reasonably believed that the reports received from France and the DOJ were complete

6   and that the findings were supported by a preponderance of the evidence.  Even if wrong, a mistaken

7   belief honestly held is not unlawful  There is no rational basis from which to conclude that Jordan's

8   decisions were motivated by race.

9          **4.      Longmire Cannot Establish that Defendant Jordan Personally Engaged in
               Discrimination Against Him**

10

11          For the same reasons identified above, Longmire cannot prove that Defendant Jordan

12   subjected him to an "adverse employment action." *Brooks, supra*, 229 F.3d 917, 928 (9th Cir. 2000).

13   Further,  in response to Jordan's legitimate reasons for his actions, Longmire cannot establish that

14   Jordan's legitimate non-discriminatory reason (investigating allegations of officer misconduct) is

15   pretext for unlawful discrimination.  There is no evidence that Jordan had discriminatory animus

16   toward African Americans in OPD.  (Joyner Dep. 186:9-19.; 189:23-190:17.)  Jordan, an African

17   American, is the second highest ranked officer in the department.  In the nearly two decades prior to

18   Bailey's murder that they worked together, Longmire did not believe that Jordan had discriminatory

19   views or beliefs.. (Longmire Dep. 71:1-20)  It is undisputed that Jordan publically supported

20   Longmire for months after Bailey's murder despite knowing of his relationship with Bey IV. (FAC

21   21, Jordan Dec.¶6)  Even after Longmire was criticized by the press because of his relationship with

22   Bey IV, Jordan did not rush to judgment or remove Longmire from the Bailey investigation.

23   Instead, he publically supported him.

24          **5.      Longmire Cannot Establish That Defendant Whent Personally Engaged in
               Discrimination Against Him**

25

26           Longmire alleges that Whent's decision to recommend termination of his employment is an

27   adverse employment action.   Even if Defendant Whent made a recommendation for termination,

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**FOSTER**employment**law**
3000 Lakeshore Avenue
Oakland, California 94610

Longmire was not terminated.  Since there was no resulting material change in Longmire's

employment situation, the alleged recommendation cannot rise to the level of an adverse action as a

matter of law.  Longmire's prima facie claim against Defendant Whent, likewise, fails because

Longmire admittedly does not know if Defendant Whent subjected him to less favorable treatment

because of his race. (Longmire Dep. 77:8-78:21)   Longmire fails to dispute Defendants' evidence

that Whent's recommendation for Longmire's termination had no connection to his race. (Whent

Dec.  ¶22.)

### C.   LONGMIRE'S FOURTH AMENDMENT INVASION OF PRIVACY CLAIM FAILS AS A MATTER OF LAW

Plaintiff's second claim relates to the alleged disclosure to the press of personnel information

in April 2009, following the decision by Defendant Jordan to sustain the allegations of misconduct

and place Sgt. Longmire on administrative leave (FAC 3)

### 1.   Defendants Are Not Liable for Disclosure of Longmire's Private Information

In order to be individually liable under section 1983, an individual must personally

participate in an alleged rights deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

The elements of a 1983 claim are (1) the action occurred "under color of state law" and (2) the

action resulted in the deprivation of a constitutional right. *Id.*

Plaintiff has admitted that he has no evidence to support his Fourth Amendment privacy

claim.

> Q:      Tell me what facts you have that support your belief that Jordan was the source of the leak for that information to the media.
> *A.     I don't have any facts…*
> Q:      You've also alleged that Lieutenant Whent leaked confidential information to the media.
> A:      Yes.
> Q.      Do you believe that Lieutenant Whent informed the media of the information that we have marked in Exhibits 3 and 4?
> A.      One or the both, yes….
> Q.      And between the two of them do you have a belief as to which one of them actually contacted the media and provided the information that's in Exhibits 3 and 4?
> *A.     I don't.  It could have been one or the other.*

FOSTER employment law
3000 Lakeshore Avenue
Oakland, California 94610

19

(Longmire Dep. 101:20-23, 102:8-20; 103:16-21.)

A plaintiff cannot rely on mere speculation and conjecture to avoid summary judgment. *Getz v. Boeing Co.*, 2011 U.S. App. LEXIS 15877 (9th Cir. 2011); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (holding that "mere allegation and speculation do not create a factual dispute for purposes of summary judgment.)

Despite Longmire's speculations regarding Defendants' motivations, there is no evidence that supports Longmire's belief that Jordan or Whent leaked confidential personnel information to the media. (Longmire Dep.  106:5-20; 110:9-16; 174:22-175:5; Rains Dep. 50:2-12.) Defendants have both testified that they did not speak to the media about Longmire's personnel issues.. (Jordan Dep. 89:22-90:19, Whent Dep. 127:4-128:12). On the few occasions that AC Jordan responded to media inquiries regarding the Bailey murder investigation, Jordan was always identified as the source of the comments. (Joyner Dep. 58:12- 59:11; 77:25-78:5; 207:10-25; 208:1-18.)  Whent never spoke to the media about the Bailey investigation  or Longmire.  (Whent Dep. 127:4-20; 128:2-5.)  In fact, Longmire did not suspect that either Defendant was the source of the alleged leaks prior to being advised by attorneys and co-workers that he should sue the Department. (Longmire Dep. 175:18-176:2.)  Individuals other than Jordan and Whent knew that Longmire had been placed on administrative leave and sustained for misconduct, including, most obviously,  Longmire and his attorney. (Longmire Depo.112:11-113:15; Whent Depo.121:25-122:13; Rains Dep. 49:2-13.)  The privacy claims against Jordan and Whent have no factual basis and should be summarily dismissed.

## 2.    Longmire Did Not Have a Reasonable Expectation of Privacy

When addressing the merits of an individual's right to privacy claim, a court must weigh the government's interest in disclosure against the individual's privacy interest. *National Treasury Employees Union v. U.S. Dept. of the Treasury*, 25 F.3d 237, 242 (5th Cir. 1994) (citations omitted).

Information falls within the realm of constitutional protection when an individual has a legitimate expectation that the information will remain confidential while in the state's possession and that expectation outweighs the public need for disclosure.  *Orozco v. County of Monterey*, 941 F.Supp. 930, 937 (N.D. Cal. 1996).  The right to privacy is not absolute; rather, it is a conditional

F O S T E R employment law
3000 Lakeshore Avenue
Oakland, California 94610

20

FOSTERemploymentlaw
3000 Lakeshore Avenue
Oakland, California 94610

1   right which may be infringed upon a showing of a proper governmental interest.  See *In Re*

2   *Crawford*, 194 F.3d 954, 958 (9th Cir.1999).

3         Under the specific circumstances of this case, Longmire could not have a reasonable

4   expectation that Internal Affairs findings would remain confidential.  Although he claims that

5   California Penal Code Section 832.7 gives him such an expectation of privacy, that expectation was

6   vitiated when his attorney, Mike Rains, spoke to the media in the days following the decision to

7   place Longmire on administrative leave. (Rains Depo.18:1-8; 18:20; 19:6; 19:24-3; RFA 13.)

8   According to Longmire, Rains' strategy included openly discussing information about Longmire

9   with the media. (Longmire Dep. 149:13-150:23).  In fact, in October 2009, Rains opened up his

10  entire file, including the documents that Longmire now claims contained privileged information, to

11  Jaxon VanderBeken a reporter at the San Francisco Chronicle.  (Rains Dep 20:18-22:22)  Rains also

12  informed the press that Longmire would receive a five day suspension as a result of the Medeiros

13  initiated investigation (Longmire 146:13- 19; 148:9-20; 150:5-23.)  When asked about his attorney's

14  very public statements to the media, Longmire explained:

15          A:     I think the city and the people in it,… deserve to know what's
        happening in the police department.

16          Q.    And why do you think the people of the city deserve to know what's
        happening in the police department?

17          A.    Because, …, we hold a sacred trust, the community holds that for
        us, and that we're really there for the people.  We serve the people, and

18          they have a right to know if we are -- as an organization if we have
        integrity, if we are exercising good morals.  And if we can't treat ourselves

19          fairly and with decency we can't -- you can't expect to have Officers come
        on the street and meet complete strangers that may be in distress or may

20          have issues  or morals that are different from our own, can't expect us to
        come out on the street and give those people the proper service.

21

22  (Longmire Dep.  152:5-23)

23        Longmire acknowledged that he was at the center of media attention and that the public had a

24  right to know what had occurred.

25       **D.     LONGMIRE'S FIRST AMENDMENT CLAIM LACKS LEGAL MERIT AND
            SHOULD BE SUMMARILY DISMISSED**

26

27       To prove retaliation under Section 1983, plaintiff must show (1) he engaged in a protected

28

21

activity; (2) that he suffered an adverse action , (3) that there was a causal connection between the two events.  *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

### 1. Longmire Cannot Establish That He Engaged In Protected Speech

In a First Amendment retaliation action, the plaintiff bears the burden of showing that the speech addressed an issue of public concern. See *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983); *Bauer v. Sampson*, 261 F.3d 775, 784 (9th Cir. 2001). "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.' " *Johnson v. Multnomah County*, Or., 48 F.3d 420, 422 (9th Cir. 1995) (*quoting Connick*, 461 U.S. at 146).  But "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.' " *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)  (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.' " *Johnson*, 48 F.3d at 422 (quoting *Connick*, 461 U.S. at 147-48).

Longmire cannot establish that he spoke on a matter of public concern because Rains' letter addressed a matter of personal interest, Longmire's employment, and was made in the context of the Department's disciplinary process.  Unable to demonstrate that the letter addressed a public concern, Longmire now claims that it refers to unlawful discrimination.  At deposition he admitted that the letter does not complain about discrimination. (Longmire Dep. 65:11-66:7)  He urges that reading the letter in its entirety gives rise to such an inference.  No such inference can be drawn from the letter.

### a. Longmire's First Amendment Claim Fails Because He Did Not Speak As a Private Citizen

Even if the court were to find that Rains' letter implicated matters of public concern, the court must look beyond the content of the speech and determine whether Longmire's speech was made as a private citizen rather than in the context of his employment.  *Eng v. Cooley*, 552 F.3d

FOSTER employment law
3000 Lakeshore Avenue
Oakland, California 94610

22

1062, 1071 (9th Cir. 2009).  Complaints by an employee to an employer about personnel matters are not protected under the First Amendment.  *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009); *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006).  Rains' letter disputed the evidence used to support Longmire's termination.  It was not addressed to the public. The letter concerned Internal Affairs and employee discipline and was triggered by Longmire's personal concerns about the status of his employment.  Rains, in his deposition, admitted as much.  According to Rains explained that his focus in the discipline process was to show that Longmire didn't do anything wrong during his investigation of the Bailey's murder.   (Rains Dep. 44:4-48:25).   The undisputed evidence in this case demonstrates that Longmire did not speak as a private citizen and thus cannot establish a violation of the First Amendment.

### 2.     Longmire Did Not Suffer An Adverse Action Because of the July 9, 2009 Letter

Longmire bears the burden of showing that he was subjected to an adverse employment action and that protected speech was a ***substantial or motivating factor*** in the adverse action. Eng *supra*, 552 F.3d at .  Rains' letter was sent to the Department on July 9, 2009.  There is no evidence from which to infer that Longmire's administrative leave had any connection to Rains' letter.  At the time Rains sent his July 9, 2009, letter Longmire was already on paid administrative leave.  After the Skelly hearing,  Jordan met with the Skelly officer to discuss his recommendation.  The Skelly Officer's advised Jordan of his opinion regarding the findings and the evidence, which included the letter submitted by Rains, which he briefly summarized. (Jordan Dep.  53:11-18; 154:16-22)  Jordan was not told that the letter claimed due process violations or race discrimination. (Jordan Dep. 154:23-156:8.) Satisfied that the evidence was insufficient to support the findings, Jordan reversed his prior findings.  (Jordan Dec. ¶12.)  Sometime thereafter, Jordan informed the City Administrator that he was rescinding his termination recommendation. On these undisputed facts, Longmire cannot establish that Jordan retaliated against him because of Rains' letter.

**F.    LONGMIRE HAS FAILED TO DEMONSTRATE THAT HE SUFFERED CONSTITUTIONAL HARM**

An individual may recover under § 1983 only when his federal rights have been violated. *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986). Under the facts of this case, Longmire cannot establish that he suffered an underlying violation of his rights.  In the absence of such a showing, the City cannot be liable as a matter of law, and the claims brought against the City must be summarily dismissed.   *Quintanilla v. City of Downey*, 84 F.3d 353 9th Cir. (1996) (plaintiff could not recover on a § 1983 claim against city or police chief absent underlying violation of his constitutional rights.)

**IV.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment and dismiss Longmire's complaint in its entirety.


Dated:  April 12, 2011                           FOSTER EMPLOYMENT LAW



                                                        /s/ Madelyn Jordan-Davis
                                                        Michael W. Foster
                                                        Madelyn Jordan-Davis
                                                        C. Christine Maloney
                                                        Attorneys for Defendants
                                                        CITY OF OAKLAND, HOWARD JORDAN