MICHAEL W. FOSTER (State Bar No. 127691)
mfoster@fosteremploymentlaw.com
MADELYN G. JORDAN-DAVIS (State Bar No. 181771)
mjd@fosteremploymentlaw.com
C. CHRISTINE MALONEY (State Bar No. 226575)
cmaloney@fosteremployment.com
FOSTER EMPLOYMENT LAW
3000 Lakeshore Avenue
Oakland, California 94610
Telephone: (510) 763-1900
Facsimile: (510) 763-5952

BARBARA PARKER, City Attorney (State Bar No. 069722)
RANDOLPH W. HALL, Chief Assistant City Attorney (State Bar No. 080142)
VICKI A. LADEN, Supervising Deputy City Attorney (State Bar No. 130147)
CHRISTOPHER KEE, Deputy City Attorney (State Bar No. 157758)
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-7686
Facsimile: (510) 238-6500

Attorneys for Defendants,
CITY OF OAKLAND, HOWARD JORDAN
and SEAN WHENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCSICO DIVISION

| | |
|---|---|
| DERWIN LONGMIRE,<br><br>   Plaintiff,<br>vs.<br><br>CITY OF OAKLAND, HOWARD JORDAN, SEAN WHENT, and DOES 1-50, inclusive,<br><br>   Defendant. | Case No. C 10-01465 JSW<br><br>(42 U.S.C. §§ 1981 and 1983)<br><br>**DECLARATION OF SEAN WHENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Date: December 9, 2011**<br>**Time: 9:00 a.m.**<br>**Dept: Courtroom 11, 19th Floor**<br>**Judge: Hon. Jeffrey S. White**<br><br>Date Action Filed: April 7, 2010<br>Trial Date: February 27, 2012 |

1

DECLARATION OF SEAN WHENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

I, Sean Whent, declare as follows:

1. I am currently employed as a Lieutenant of Police for the City of Oakland. I have worked for the Oakland Police Department ("OPD") since May 1994. I was promoted to Sergeant ("Sgt.") in January 2003 and then to Lieutenant ("Lt.") in August 2006. In September 2005, I was assigned to the Internal Affairs Department. In the summer of 2007, I was responsible for supervising IA investigators. I have personal knowledge of the following.

2. In April 2008, Internal Affairs ("IA") received a complaint concerning Sgt. Derwin Longmire[1]. IA was asked to investigate whether Sgt. Longmire had a relationship with members of Your Black Muslim Bakery ("Bakery") and whether he attempted to improperly influence open criminal investigations involving Bakery members. I was not involved in the decision to refer this matter to IA. It is my understanding that the matter was referred following an internal complaint made by former OPD officer Jesse Grant.

3. Once the matter was referred to IA, I assigned the investigation to Sgt. Robert Chan. The case was assigned to Sgt. Chan based on the work load of the IA investigators at the time.

4. As the IA investigation progressed, Sgt. Chan reported on several things that he was uncovering during the investigation that suggested possible misconduct. Eventually, the investigation was expanded to implicate Lt. Ersie Joyner and then Captain Jeff Loman. Based on case developments in this high profile case, I pushed to have the case re-assigned to an outside agency. I made the recommendation so that the department could obtain a neutral and objective look at the evidence.

5. Eventually, the department hired consultant Wendell "Pete" France to take over departments IA investigation. Around the same time, Mayor Ronald Dellums asked the Department of Justice ("DOJ") to conduct a parallel investigation into Longmire's conduct. At that point, I was not involved in either monitoring or supervising the investigations performed by either

---

[1] Prior to that, in late 2007, IA had been contacted by a citizen with a complaint about Sgt. Longmire. Specifically, the citizen alleged that Sgt. Longmire and his partner used excessive force to obtain the August 3, 2007 confession from Devaugndre Broussard. During the course of that investigation it was determined that the allegation was unfounded.

2

DECLARATION OF SEAN WHENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1  agency. The extent of my contact with the DOJ was to assist with scheduling the witness
2  interviews

3    6. In late 2008, OPD was informed of an alleged rape in Antioch, California. The victim
4  claimed that an OPD officer committed the rape. Based on a set of very unfortunate circumstances,
5  Sgt. Longmire was identified as the suspect. Within days of the accusation, I attended a meeting
6  with Antioch officials, including representatives from the Contra Costa County District Attorney's
7  office. In that meeting, a representative from the DA's office asked whether Longmire had been
8  accused of any sexual misconduct in the past. In response to the inquiry, I explained that there had
9  been an accusation that Sgt. Longmire was provided women by the Bakery. My understanding, at
10 the time that I shared the information, was that it could have some potential relevance to the DA's
11 inquiry. I further understood that I was legally authorized to share that information with members
12 of the DA's office in an open and active criminal investigation. Nonetheless, shortly thereafter, we
13 learned that the woman who accused Sgt. Longmire of raping her was not mentally stable and the
14 entire accusation had been unfounded.

15    7. In January 2009, I was assigned to work as the Acting Captain of IA.

16    8. Sometime in February 2009, Sgt. Longmire was transferred from Homicide to Patrol. I
17 did not participate in the decision to transfer Sgt. Longmire. In late February 2009, Lt. Brian
18 Medeiros contacted Internal Affairs and alleged that it appeared that Sgt. Longmire had failed to
19 investigate several homicide cases that had been assigned to him in the prior year. The IA
20 investigation was assigned to Sgt. Edward Juarez.

21    9. In April 2009, I received the DOJ's investigation. In addition to the Longmire report,
22 the DOJ provided reports relating to both Lt. Joyner and Captain Loman. Along with their reports,
23 they delivered three boxes full of evidence. In addition, Pete France provided the OPD with a
24 separate report which outlined his findings for all three subjects.

25    10.    Having received the investigations in close proximity to the department's 3304

3
DECLARATION OF SEAN WHENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

deadline,[2] I did not have the opportunity to review all of the evidence contained in the three banker's boxes. I did, however, spend approximately eight hours reviewing the investigations provided by the DOJ and France. Both investigations concluded that Sgt. Longmire deliberately did an inadequate investigation into the Bailey murder, most likely due to a personal relationship with Bey IV. Although I was not totally satisfied with either report, I believed that it would have been irresponsible for the department to dismiss the independent conclusions of the outside agencies and overlook what appeared to be relatively obvious misconduct by Sgt. Longmire.

11. On April 13, 2009, I met with Acting Chief Howard Jordan to discuss the investigative findings and to present to the Chief what the recommendations made by the two agencies. Thereafter, Chief Jordan decided what the final findings would be. At the conclusion of our meeting, Chief Jordan decided to place Sgt. Longmire on administrative leave. Attached hereto as Exhibit A is a true and correct copy of the pertinent portions of the April 17, 2009 memo that I prepared for Chief Jordan. [Exhibit A has been redacted to exclude information related to Lt. Joyner and Capt. Loman.]

12. After my meeting with Chief Jordan, I prepared two letters to Sgt. Longmire. One letter explained that Longmire had been sustained for findings and the second letter explained that he was immediately being placed on administrative leave. After I signed the letters, they were served through Longmire's chain of command. Deposition Exhibits 3 and 4 are true and correct copies of the letters that I caused to be sent to Sgt. Longmire.

13. I did not speak to any member of the media regarding Sgt. Longmire's administrative leave or investigative findings. Further, I did not instruct anyone from Internal Affairs to speak with the media about Sgt. Longmire's personnel matter.

14. On or about May 1, 2009, I prepared a memo to Chief Jordan and recommended that Sgt. Longmire be terminated from his employment. Deposition Exhibit 6 is a true and correct copy of the memo that I prepared to Chief Jordan. Chief Jordan agreed with the recommendation

---

[2] California Government Code Section 3304.

4
**DECLARATION OF SEAN WHENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

and thus recommended that Longmire be terminated.

15. Longmire's Skelly hearing was held on July 10, 2009 with Captain Anthony Toribio. I did not participate in that hearing. At some point after the Skelly, I learned that Chief Jordan reversed his prior termination recommendation. Pursuant to OPD's custom and practice, the Longmire Skelly file was forwarded to IA.

16. Out of curiosity, when the file was returned to IA, I reviewed Toribio's report and portions of Michael Rain's July 9, 2009, Skelly response. Given the sheer volume of Rains letter, I only read the portion of the letter that explained why Sgt. Longmire did or did not do certain things during the course of the Bailey homicide investigation.

17. At some point thereafter I shared my thoughts with Chief Jordan. Specifically, I thought that Rains made some good points and answered some of the issues regarding Longmire's conduct that had initially been very troubling. I did not discuss the letter with Chief Jordan in any other respect. I do not know if Chief Jordan ever reviewed Rains letter. However, at the time that I shared my opinion with Chief Jordan, I do know that he had already reversed his recommendation to terminate Sgt. Longmire for misconduct relating to the Bailey investigation.

18. Notwithstanding, there was still a pending case related to Medeiros' complaint[3]. As a result, I was informed that a decision had been made to try and resolve the pending discipline matter before Longmire was returned to work. I did not make the decision to keep Sgt. Longmire on administrative leave nor did I have the authority to do so. During the discussions that I participated in regarding Longmire's return to work, Mike Rains' July 9, 2009, letter was never raised.

19. Once a decision was made regarding Longmire's discipline for the second case I was told to contact Rains and attempt to negotiate a resolution of the matter. Beginning in the late summer of 2009, I began to negotiate Longmire's return to work. During the course of our

---

[3] Although Lt. Joyner became a subject in the Medeiros complaint regarding his supervision of Longmire, it was determined early on not to pursue discipline against Lt. Joyner because the cases were still open and had not yet been presented to him for review.

negotiations we spoke 3-4 times. At all times it was my understanding that the goal of the negotiations was to return Longmire to work and to resolve all outstanding discipline matters.

20. On or about October 5, 2009, Sgt. Longmire, through his attorney, complained that I had engaged in misconduct based on the information that I shared with the Contra Costa County DA's office during the 2008 rape allegation in Antioch. Thereafter, the matter was referred to IA and I became the subject of an internal affairs investigation.

21. At one point in October 2009, I believed the parties had reached agreement regarding Longmire's discipline. The tentative agreement was that Longmire would accept 5 days suspension for the Medeiros complaint. However, I was later informed that Longmire rejected the offer. As a result, a decision was made to bring Longmire back to work and to proceed with discipline on the Medeiros matter.

22. I worked as the Acting Captain of IA until October 16, 2010. During my tenure, I made over one hundred discipline recommendations ranging in severity from counseling/training up to and including termination. The recommendations resulted from allegations of varying levels of misconduct and involved officers from diverse ranks and racial backgrounds. As a commander in IA, I made approximately six termination recommendations for officers who were sustained for findings in cases involving alleged misconduct. The termination recommendations involved an African-American female, an African-American male (Sgt. Longmire), two Hispanic males and two Caucasian males. Each recommendation was made in good faith based on the circumstances of each individual case.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 8 day of August, 2011 at Oakland, California.

_____
SEAN WHENT

# EXHIBIT A

# CITY OF OAKLAND

## Memorandum

TO: Office of the Chief of Police
ATTN: Acting Chief A. Jordan
FROM: Internal Affairs Division
DATE: 17 Apr 09

RE: 07-0553 Addendum

---

On 13 Apr 09 we met and reviewed the investigative reports for this case that were completed by the Attorney General's Office and our consultant, Pete France. We discussed the findings and noted that some conclusions were different between the two investigations. You decided what the final findings were. This memo is to briefly outline how you arrived at those findings.

As to Sgt. Derwin Longmire:

The report from the Attorney General's Office came to the following conclusions:

    MOR 314.39 Performance of Duty – Sustained
    MOR 314.42 Obedience to Laws and Regulations – Not Sustained
    MOR 370.72 Compromising Criminal Cases- Sustained
    MOR 370.81 Assisting Criminals- Not Sustained
    MOR 384.70 Subversive Organization- Not Sustained

The report from Pete France came to the following conclusions:

    MOR 398.73 Retaliation – Sustained
    MOR 370.72 Compromising Criminal Cases – Sustained
    MOR 314.30 Insubordination- Sustained
    MOR 314.39 Performance of Duty- Sustained
    MOR 383.56 Membership in Organizations- Unfounded

I will address each allegation specifically.

MOR 370.72 Compromising Criminal Cases- Both investigations concluded that Sgt. Longmire deliberately did an inadequate investigation into the murder of Chauncey Bailey, most likely due to a relationship that he had with Bakery leader, Yusef Bey IV. The analysis of this finding is contained in the individual reports. You agreed with this finding.

MOR 314.39 Performance of Duty- Both investigations concluded that Sgt. Longmire did

OPD 0283

not conduct an adequate investigation into the murder of Chauncey Bailey. You concluded that this violation was part of the above violation and was not a separate violation and you ultimately did not charge for both as it would be inconsistent with how OPD applies the Manual of Rules.

MOR 314.30 Insubordination – This allegation was not specifically addressed in the state investigation but the circumstances of it were covered. Pete France concluded that Sgt. Longmire disobeyed a direct order from his lieutenant to document all contacts he had with bakery members. Sgt. Longmire confirmed he was told this but stated he did not interpret it as an "order." You approved this finding.

MOR 398.73 Retaliation- The state did not have a finding for this allegation. Pete France concluded that Sgt. Longmire did retaliate against Off. Grant for reporting Longmire's misconduct to Capt. Loman. You concluded that there is not sufficient proof that Longmire actually took any adverse action against Grant. Although it is clear that Longmire had a negative opinion of Grant there is not sufficient proof to show that Longmire acted on that feeling.

MOR's 384.70, 370.81, and 383.56 – All of these allegations were either unfounded or Not Sustained by the investigations. You agreed and concluded there was not sufficient proof to show that Sgt. Longmire was an actual member of the Bakery or that he did anything to specifically assist any criminal to commit a crime, evade arrest or dispose of evidence.

The final sustained findings for Sgt. Longmire are:

**Compromising Criminal Cases**      MOR 370.72-1      Sustained
The investigation showed sufficient evidence that Sgt. Longmire intentionally conducted an inadequate homicide investigation.

**Insubordination**      MOR 314.30-1      Sustained
The investigation showed sufficient evidence that Sgt. Longmire failed to obey an order from his commander to document all contacts he had with Bakery members.

REDACTED

OPD 0284

*[signature]*

Sean Whent
Acting Captain of Police
Internal Affairs Division

REDACTED

OPD 0285