1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
8
9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10   DERWIN LONGMIRE,

11          Plaintiff,                        No. C 10-01465 JSW

12      v.

13   CITY OF OAKLAND, HOWARD JORDAN,          **ORDER GRANTING MOTION**
     SEAN WHENT, and DOES 1-50, inclusive,    **FOR SUMMARY JUDGMENT**
14
            Defendants.
15
     _____/
16

17          Now before the Court is the motion for summary judgment filed by defendant City of

18   Oakland ("City") and individuals Howard Jordan and Sean Whent ("Individual Defendants").

19   This motion is now fully briefed and ripe for decision.  The Court finds that the motion is

20   appropriate for disposition without oral argument and the matter is deemed submitted.  *See* N.D.

21   Civ. L.R. 7-1(b).  Accordingly, the hearing set for December 9, 2011 is HEREBY VACATED.

22   Having carefully reviewed the parties' papers and considered their arguments and the relevant

23   legal authority, and good cause appearing, the Court HEREBY GRANTS Defendants' motion

24   for summary judgment.

25                                    **BACKGROUND**

26          According to the allegations in the first amended  complaint, Plaintiff Derwin Longmire,

27   a Sergeant with the City of Oakland Police Department, was assigned to the homicide division

28   in 2007 when he was accused by other officers of interfering with the police department's

United States District Court

For the Northern District of California

criminal investigation into the Black Muslim Bakery ("the Bakery").  (Compl. at ¶¶ 2, 4, 20-24.)  Members of the Bakery had been suspected of being involved in two homicides, a kidnapping, a robbery, torture, and a shooting.  (*Id.* at ¶ 16.)

On the morning of August 2, 2007, Chauncey Bailey, a well-respected reporter who was investigating the Bakery for the Oakland Post, was gunned down in Oakland.  (*Id*. at ¶ 12.)  As Plaintiff was on call at the time, he was assigned to the homicide investigation.  (*Id*.)  Evidence was obtained linking the Bakery to the Bailey murder and Plaintiff obtained a confession from Devaundre Broussard.  (*Id.* at ¶ 18.)  In April 2008, Assistant Chief Howard Jordan and Lt. Sean Whent commenced an Internal Affairs ("IA") investigation of Plaintiff based on allegations that he had compromised the Bailey homicide investigation because of his perceived religion and association with the Bakery.  (*Id.* at ¶ 20.)

Several police officers suspected that Plaintiff compromised the investigation of the Bailey murder because of his association with the Bakery.  (*Id.* at ¶¶ 20-22.)  Plaintiff alleges that the chief and others in command positions had a history of initiating and manipulating IA investigations for personal, political and discriminatory reasons and focused their investigation of Plaintiff on the basis of his religion and/or association with the Bakery.  (*Id.* at ¶ 23.)

Plaintiff also alleges that people close to the investigation illegally leaked confidential information to the press which resulted in a series of front page newspaper articles alleging that Plaintiff compromised the Bailey homicide investigation.  Plaintiff alleges that his confidential police personnel records were disclosed or caused to be disclosed by the defendant officers.  (*Id*. at ¶¶ 25, 34, 35.)  Plaintiff alleges that he suffered harm as a result of the alleged media disclosures both to his reputation and to his ability to maintain his career as a police officer.  (*Id*. at ¶¶ 34, 36.)

On May 1, 2009, both Acting Captain Sean Whent and Acting Chief Jordan recommended that Plaintiff be terminated as a result of their findings that Plaintiff had intentionally compromised the Chauncey Bailey murder investigation.  (*Id.* at ¶ 37.)

United States District Court

For the Northern District of California

1    On July 9, 2009, Plaintiff, through his attorney, responded to the findings and

2    complained that the justification for his recommended termination was "based on numerous due

3    process violations and unlawful discrimination."  (*Id.* at ¶ 38.)

4    In response to Plaintiff's lawyer's correspondence of July 9, 2009, Plaintiff alleges

5    Defendants placed him on administrative leave instead of returning him to work and, in

6    retaliation for his complaints, attempted to use their more recent investigation as a bargaining

7    chip to obtain a release of liability from Plaintiff in return for allowing him to return to work.

8    (*Id.* at ¶ 40.)  After several more correspondences, Plaintiff was ordered returned to work on

9    December 23, 2009 and was served with a notice of a proposed 20-day suspensions for alleged

10   misconduct relation to the more recent investigation.  (*Id.* at ¶¶ 41-44.)  Plaintiff alleges that, as

11   a result of the unlawful disclosure of confidential personnel information to the press,

12   compounded with his administrative leave, Plaintiff suffered irreparable harm to his career and

13   reputation.  (*Id.* at ¶ 45.)

14   After two rounds of motions to dismiss, the Court permitted Plaintiff to proceed with the

15   causes of action based on the theory of race discrimination.  The Court dismissed claims

16   premised upon the theory of disparate treatment motivated by Plaintiff's perceived association

17   with the Muslim religion.  Having failed to find any authority for the causes of action premised

18   upon the perceived religion theory, the Court allowed the Plaintiff to proceed on his claims

19   under a theory of race discrimination only.

20   The remaining claims are: (1) violation of 42 U.S.C. § 1983 against Individual

21   Defendants based on conduct under color of law intended to deprive Plaintiff of his right to

22   freedom of speech, guaranteed by the First Amendment, his right to privacy guaranteed by the

23   Fourth Amendment and his right to equal protection of the laws guaranteed by the Fourteenth

24   Amendment; and (2) municipal liability on behalf of the City wherein the Individual

25   Defendants' actions were ratified and adopted by the City.

26   The Court will address additional facts as necessary in the remainder of this order.

27

28

**United States District Court**
For the Northern District of California

**ANALYSIS**

A.      **Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattret*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment

4

1   because a court is "'not required to comb the record to find some reason to deny a motion for

2   summary judgment.'"  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th

3   Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418

4   (9th Cir. 1988)).  If the non-moving party fails to point to evidence precluding summary

5   judgment, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

6   **B.      Race Discrimination Claims Do Not Survive Summary Judgment.**

7          Plaintiff brings claims for race discrimination and contends that the City acted to his

8   detriment based on his membership in a protected class.  In order to make a claim for

9   discrimination, Plaintiff must establish that he suffered an adverse employment action that was

10  motivated by intentional discriminatory animus.  *See, e.g., Guz v. Bechtel National, Inc*., 24

11  Cal.4th 317, 353-58 (2000).  The proper legal framework for determining whether Plaintiff's

12  claim should survive summary judgment is the familiar burden-shifting scheme set out in

13  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

14         First, Plaintiff must establish a prima facie case of discrimination.  *See id.*; *Guz,* 24

15  Cal.4th at 351-54.  Whether Plaintiff can meet his burden to establish a prima facie case of

16  discrimination is a matter of law to be determined by the court.  *Caldwell v. Paramount Unified*

17  *School District*, 41 Cal. App. 4th 189, 201 (1995).  If Plaintiff establishes a prima facie case, the

18  burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its

19  employment decision.  Then, in order to prevail, Plaintiff must demonstrate that the employer's

20  alleged reason for the adverse employment decision was a pretext for another, discriminatory

21  motive.  *See Guz*, 24 Cal.4th at 351-54; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d

22  1054, 1061 (9th Cir. 2002).  Plaintiff may establish a prima facie case of discrimination by

23  demonstrating that (1) he belongs to a statutorily protected class; (2) he was qualified for an

24  available position; (3) he suffered an adverse employment decision; and (4) similarly situated

25  individuals not in the protected class were treated more favorably.  *St. Mary's Honor Ctr. v.*

26  *Hicks,* 509 U.S. 502, 506 (1993).

27         If Plaintiff succeeds in establishing a prima facie case, the burden of production shifts to

28  the employer to articulate a legitimate, nondiscriminatory reason for its conduct.  *See*

*McDonnell Douglas*, 411 U.S. at 802.  If the employer does so, Plaintiff must demonstrate that the employer's articulated reason is a pretext for unlawful discrimination by "'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Plaintiff's evidence must be both specific and substantial to overcome the legitimate reasons set forth by his employer. *Aragon v. Republic Silver State Disposal, Inc*., 292 F.3d 654, 659 (9th Cir. 2002).

**1.      Prima Facie Case.**

At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)).  Although the burden for establishing a prima facie case is an easy one to satisfy, Plaintiff has failed to do so here.  Although Plaintiff's race makes him a member of a protected class and there is no dispute that he was qualified for his position, he has not demonstrated that the City's conduct qualifies as an adverse employment action and he has not demonstrated that other, similarly situated individuals not in the protected class were treated more favorably.

**a.      Adverse Employment Action.**

Defendants contend that Plaintiff fails to establish a prima facie case of race discrimination because he was not subjected to an adverse employment action.  *See Bergene v. Salt River Project Agr. Imp. And Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001) (holding that an adverse employment action is an essential element of a disparate treatment claim).  An adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of ... employment." *See Davis v. Term Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citations omitted).  "Among those employment decision that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks*

United States District Court

For the Northern District of California

6

*v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see also Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 969 (9th Cir. 1996) (holding that being replaced in a position and excluded from educational seminars, meeting and positions with the opportunity for advancement may constitute adverse employment actions).

In his amended complaint, Plaintiff alleges that he was subjected to a "biased investigation," and that based on the investigation, the Individual Defendants "made the decisions to (1) sustain the allegations of misconduct, (2) place Longmire on administrative leave and (3) recommend his termination in violation of the equal protection clause." (FAC at ¶¶ 30, 52.) Plaintiff admits that he did not receive a pay change or a demotion of any type. (*See* Declaration of Madelyn Jordan-Davis ("Jordan-Davis Decl.") at Ex. B (Longmire deposition) at 169:2-20.)

In opposition to the motion for summary judgment, Plaintiff argues that, taking an expansive view of the types of actions that can be considered adverse employment decisions, Defendants' treatment of him is sufficient to constitute an adverse employment action. However, the authority Plaintiff cites for this proposition are inapposite and the Court has not found support for the position that an allegedly biased investigation which results in paid administrative leave and a recommendation for, but not an actual, termination constitute adverse employment actions. Mere investigation, paid administrative leave and a recommendation for termination without actual termination are not considered adverse employment actions. *See McInnis v. Town of Weston*, 375 F. Supp. 2d 70, 84, 85 (D. Conn. 2005) (holding that the initiation of a police internal affairs investigation is not an adverse employment action); *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 891-92 (8th Cir. 2005) (holding that placement of a corrections officer on paid administrative leave pending internal affairs investigation and subsequent return to work were not considered actionable adverse employment actions); *Breaux v. City of Garland*, 205 F.3d 150, 158-160 (5th Cir. 2000) (holding that threats of discipline are "just hot air" unless they are actually carried out); *see also Yee v. Solis*, 2010 WL 1655816, at *5 (N.D. Cal. April 22, 2010) (holding that the mere threat of termination does not constitute an adverse employment action). There is no legal support for

the notion that the conduct Plaintiff complains of here constitute actionable adverse employment actions. Accordingly, Plaintiff fails to allege one of the essential elements of his prima facie case of employment discrimination.

### b. Similarly Situated Individuals.

In addition, Plaintiff has not shown that other employees outside of his protected class were treated more favorably for the same or similar conduct. Plaintiff does not even allege in his complaint that similarly situated employees were treated more favorably than he was.

Plaintiff does not proffer, and, having scoured the record, the Court has not found any evidence that other specific individuals had similar records or were disciplined less severely for similar conduct. There is no evidence that any discipline, or lack of discipline, resulted from the same or even materially similar conduct. There is no evidence in the record indicating any conduct toward non-African American people, what their job duties were, what qualifications they possessed, what division they worked in, whether or not they are members of Plaintiff's protected class, or how they are similarly situated. *See Vasquez v. City of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct.") Plaintiff has not established that any individuals who may have faced lesser sanctions for similar conduct were actually comparable situations. Although similarly situated does not require that the employees be identically situated, the critical question is whether the plaintiff and the other employees are similarly situated in all material aspects. *See Bowden v. Potter*, 308 F. Supp. 2d 1108, 1117 (N.D. Cal. 2004). The question for the court is whether the purported purpose of the challenged action required similar treatment of the two employees or whether the different situations justified different treatment due to differences in the employees' status or other condition beside race. *Id.*

Based on a dearth of evidence, Plaintiff has failed to raise a dispute of fact regarding whether other employees with similar qualifications, but outside of his protected class, were treated more favorably. *See Texas Dep't of Community Affairs*, 450 U.S. at 258 (holding that the plaintiff bears the burden of showing that similarly situated co-workers were treated differently). Because there is no evidence that other, similarly situated individuals were treated

8

United States District Court

For the Northern District of California

1  more favorably based upon their race, the Court finds that Plaintiff has not met his burden to

2  demonstrate the existence of a prima facie case of race discrimination based on this factor.[1]

3  Based on the absence of an adverse employment action or facts demonstrating that other,

4  similarly situated individuals not in the protected class were treated more favorably, summary

5  judgment on Plaintiff's claims based on race discrimination are properly granted.

6        However, even assuming *arguendo* that Plaintiff had established a prima facie case of

7  race discrimination, summary judgment is still warranted because the City has asserted a

8  legitimate, nondiscriminatory reason for its treatment of Plaintiff, and Plaintiff has failed to

9  demonstrate the reason is merely pretextual.

10        **2.**        **The City Has Demonstrated Legitimate Reasons for Its Conduct.**

11        Even if Plaintiff could successfully establish a prima facie case of race discrimination,

12  the undisputed facts demonstrate that the City had legitimate reasons for its conduct.  There is

13  no dispute – and, in fact, Plaintiff concedes – that it was proper police procedure to initiate an

14  internal affairs investigation where there were allegations that an officer might have an

15  affiliation with a possible homicide suspect.  (*See* Jordan-Davis Decl., Ex. B at 21:4-10, 25:22-

16  26:24, 26:25-27:15.)  The undisputed facts in the record demonstrate that Plaintiff did indeed

17  have an affiliation with the Bakery, both by patronizing the business and by maintaining

18  personal relationships with its members.  (*See, e.g., id.* at 46:9-47:20, 197:22-25, 206:20-25,

19  207:14-208:20; Ex. C (Jordan deposition) at 157:8-11; Ex. D (Whent deposition) at 164:9-23;

20  Ex. I (DOJ Interview with Plaintiff) at 40:8-18, 41:2-11, 50:2-18, 74:12-77:11; Declaration of

21  Andre Rachal at ¶ 4; Supplemental Declaration of Howard Jordan at ¶¶ 4-5; Declaration of

22  Jesse Grant at ¶¶ 6, 12-16, 19; Declaration of Wendell "Pete" France at ¶ 8; Declaration of John

23  Houston at Ex. A (Howard Jordan interview transcript) at 32:17-33:12, 47:5-21, 48:15-49:20,

24  55:3-20, 80:5-13.)  The initiation of the investigation was in accordance with proper police

25  procedure based on the undisputed knowledge that Plaintiff did in fact have ties with the

26  possible homicide suspect.  (Declaration of Howard Jordan ("Jordan Decl.") at ¶ 7.)  There is

27  

28      [1] As an aside, the Court notes that even Plaintiff contends there was no other race-based discrimination he experienced prior to the incident giving rise to this suit.  (*See* Jordan-Davis Decl., Ex. B at 71:1-20, 78:3-14.)  (*See also* Jordan Decl. at ¶ 19.)

1   nothing in the record to dispute the City's legitimate reasons for subjecting Plaintiff to an

2   investigation and paid administrative leave pending its outcome.

3          **3.      Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.**

4          Because the City presents evidence demonstrating a legitimate, nondiscriminatory

5   reason for the termination, Plaintiff bears the burden of demonstrating that the City's articulated

6   reason is pretextual.  Plaintiff may do so "either [1] directly by persuading the court that a

7   discriminatory reason more likely motivated the employer or [2] indirectly by showing that the

8   employer's proffered explanation is unworthy of credence."  *Merrick v. Farmers Ins. Group,*

9   892 F.2d 1434, 1437 (9th Cir. 1990) (internal cites and quotations omitted).

10         The Court has already determined that the undisputed evidence demonstrates that

11  Plaintiff had an affiliation with the Bakery and its members and that was sufficient cause to

12  initiate an internal affairs investigation.  Plaintiff fails to refute the City's legitimate, non-

13  discriminatory reasons for its conduct and has no direct evidence that a discriminatory reason

14  motivated his employer.

15         Beside his unsupported and conclusory allegations, Plaintiff fails to set forth any direct

16  evidence to persuade the court that a discriminatory reason more likely motivated the City or

17  any indirect evidence tending to demonstrate that the City's proffered explanation is unworthy

18  of credence.  *See Merrick,* 892 F.2d at 1437.  Having scoured the record, the Court finds there is

19  no support for any of Plaintiff's claims based upon race discrimination.

20         Accordingly, the Court grants summary judgment on Plaintiff's allegations of

21  discrimination based on race.

22  **C.     Privacy Claim Does Not Survive Summary Judgment**.

23         Plaintiff's second claim is based upon the allegations that the Individual Defendants

24  disclosed information from Plaintiff's personnel file to the press in April 2009, following the

25  decision by Defendant Jordan to sustain the allegations of misconduct and place Plaintiff on

26  administrative leave.  (*See* FAC at ¶¶ 3, 34-36, 53.)   Plaintiff alleges the alleged disclosure to

27  the press of his personnel information constitutes an invasion of privacy in violation of the

28  protections afforded by the Fourth Amendment.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

However, Plaintiff has failed to introduce evidence that any of the Individual Defendants actually disclosed the material.  In his deposition, Plaintiff admitted that he has no evidence to support this claim.  (*See* Jordan-Davis Decl., Ex. B at 101: 9-23, 102:21-103:21, 110:9-16, 175:2-9.)  Despite Plaintiff's speculation that one of the Individual Defendants must have leaked information to the press, there is no actual evidence to that effect in the record.[2]  Plaintiff repeatedly concedes that he has no facts to support his speculation and it could have been one or the other of the Individual Defendants.  (*See id.*)  Both Individual Defendants have testified under oath that they did not speak to the media about Plaintiff's personnel issues.  (*See id.* at Ex. C at 89:22-90:19; Ex. D at 127:4-128:15; *see also* Declaration of Sean Whent ("Whent Decl.") at ¶ 13.)  A plaintiff may not rely on mere speculation and conjecture without admissible, supporting evidence to avoid summary judgment.  *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (holding that mere allegation and speculation do not create a factual dispute for purposes of summary judgment).

Further, to the extent that there was a leak to the press of the information relating to the investigation of Plaintiff, Plaintiff himself concedes that the information, which he provided to his attorney for the purpose of communicating to the press, would be valuable and relevant to the public.  (*See* Jordan-Davis Decl., Ex. B at 149:13-150:23, 152:5-23; *see also* Supplemental Declaration of Madelyn Jordan-Davis at Ex. O (Longmire deposition) at 121:7-19.)  In his deposition, Plaintiff himself took the position that it is the public's right to know the happenings in the police department as its officers serve the people.  (*See* Jordan-Davis Decl., Ex. B at 149:13-150:23, 152:5-23.)  According to his own testimony, the information allegedly leaked to the press should have been made available to the public and was therefore not subject to constitutional protection.  *See Orozco v. County of Monterey*, 941 F. Supp. 930, 937 (N.D. Cal. 1996) (holding that the right to privacy is not absolute and only entitled to constitutional protection where the individual's legitimate expectation that the information will remain

---

[2]  There is, however, substantial evidence that Plaintiff's attorney had knowledge of the personnel matters and had regular contact with the press during the period in question. (*See* Jordan-Davis Decl., Ex. B at 148:9-23, 149:7-150:23, 152:5-23; Ex. E (Rains deposition) at 18-1-22:22.)

confidential outweighs the public need for disclosure); *see also In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (holding that the right to privacy is conditioned upon a showing of proper governmental interest). Accordingly, even if Plaintiff had proffered any evidence of the alleged disclosure by either of the Individual Defendants, the record indicates that, regardless, in the balance, such information was not subject to constitutional privacy protections.

Accordingly, the Court grants summary judgment on Plaintiff's allegations of violation of his Fourth Amendment rights to privacy.

**D.      Retaliation Claim Under First Amendment Does Not Survive Summary Judgment.**

Plaintiff also alleges that he suffered retaliation in response to his exercise of his First Amendment rights. Plaintiff alleges that he was required to remain on administrative leave from July 9, 2009 through December 23, 2009 in retaliation for a complaint submitted by his attorney during the investigation alleging due process violations and race discrimination. (*See* FAC at ¶¶ 4, 38, 54.)

In its order on the second round of motions to dismiss, the Court permitted the retaliation claim to proceed as Plaintiff had alleged that the content of his speech (through his attorney) related to alleged race discrimination against him. The Court found that, unlike an ordinary internal grievance, this type of speech may have had a tendency to disrupt the department and therefore become a matter of public concern. *See Desrochers v. City of San Bernadino*, 572 F.3d 703, 710 (9th Cir. 2009); *see also Cochran v. City of Los Angeles*, 222 F.3d 1195, 1200-01 (9th Cir. 2000). The Court found, based on the allegations in the amended complaint, that Plaintiff could proceed with this claim because although not all employee grievances amount to matters of public concern, there "is a significant distinction between complaints of a poor working relationship with one's superior and complaints involving on-the-job ... anti-Semitism, ... discrimination, and allegations of racial and gender bias." *Id.* at 711 n.7 (citing *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009); *Cochran*, 222 F.3d at 1201; *see also Eng v. Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009) (holding that communications on matters relating to the functioning of government are matters of inherent public concern); *Huppert v. City of Pittsburgh*, 574 F.3d 696, 704 (9th Cir. 2009) (holding that unlawful conduct

United States District Court

For the Northern District of California

1   by a government employee is a matter of public concern).  Proceedings before an administrative

2   tribunal constitute a matter of public concern "if they bring to light potential or actual

3   discrimination, corruption, or other wrongful conduct by government agencies or officials."

4   *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004) (citations omitted).  In

5   *Cochran*, the court held that, although related to complaints over internal affairs, the public

6   employee's speech related to issues of public concern because the "nature of the speech was

7   conducive to racial and gender tension" having a tendency to disrupt the department and which

8   are therefore "matters which are relevant to the public's evaluation of its police department."

9   *Cochran*, 222 F.3d at 1200-01.[3]

10      However, now at the summary judgment phase, Plaintiff fails to submit evidence to

11   support his claim that the letter sent by his attorney during the investigation of his alleged

12   affiliation with the Bakery contained complaints about race discrimination.  The Court has read

13   the letter itself and scoured the record submitted and finds no basis for the allegation that the

14   letter contained complaints that are relevant to the public's evaluation of its police department.

15   (*See* Jordan-Davis Decl., Ex. N.)

16      However, assuming the letter did in fact make such relevant allegations, a First

17   Amendment retaliation claims against a government employer requires that the protected speech

18   be a substantial or motivating factor in the adverse employment action and proof that the

19   government would not have taken the adverse action absent the protected speech.  *See Eng*, 522

20   F.3d at 1070.  Plaintiff argues that instead of being returned to work after the investigation

21   demonstrated that he had not compromised the Bailey homicide investigation, Defendant Jordan

22   continued Plaintiff's administrative leave "for punitive reasons that were intended to chill his

23   speech."  (*See* FAC at ¶ 4.)

24

25

26      [3] In addition, in that Order, the Court permitted Plaintiff to attempt to plead a claim
   for violation of the right to petition the government.  (*See* Order dated November 2, 2010 at
27   6, citing *Rendish v. City of Tacoma*, 123 F.3d 1216, 1222 (9th Cir. 1997) (holding that a such
   a cause of action must be supported by factual allegations that the claim was related to issues
28   of public concern)).  Plaintiff did not amend his complaint to state a claim for violation of his
   right to petition the government.

1    The record demonstrates that Plaintiff was already on paid administrative leave when his

2    lawyer submitted the letter in question.  Further, the record indicates that, after hearing all of the

3    evidence submitted during the investigation into Plaintiff's possible bias, Defendant Jordan

4    rescinded his termination recommendation.  (Jordan Decl. at ¶ 12.)  Defendant Jordan testified

5    that he made the decision to maintain Plaintiff on paid administrative leave until resolution of

6    the two investigations into his performance.  (*See id*. at ¶ 15; *see* Whent Decl. at ¶ 18.)   There

7    is simply no evidence to support Plaintiff's speculative allegation that the letter submitted by his

8    lawyer was a substantial or motivating factor in the decision to continue Plaintiff's

9    administrative leave pending conclusion of the investigations into his conduct.  Again,

10   Plaintiff's speculation is insufficient to defeat summary judgment.  *See Nelson*, 83 F.3d at 1081-

11   82.

12   Plaintiff failed to proffer evidence that the letter contained information entitled to First

13   Amendment protection and the record indicates that Plaintiff was not subjected to an adverse

14   employment action substantially caused by the protected speech.  Accordingly, the Court grants

15   summary judgment on Plaintiff's allegations of retaliation in violation of his First Amendment

16   rights.

17   **E.      *Monell* Claim Does Not Survive Summary Judgment.**

18   Plaintiff's second cause of action is for violation of 42 U.S.C. § 1983 against the City

19   for municipal liability.  Plaintiff claims that in doing the acts alleged, the Individual Defendants

20   acted as policy makers and decision makers for the City.  (*See* FAC at ¶ 56.)  In addition,

21   Plaintiff alleges that the Individual Defendants acted consistent with a custom and practice to

22   violate the constitutional rights of its lower ranking officers.  (*See id*. at ¶¶ 57-58.)

23   A local government unit may not be held responsible for the acts of its employees under

24   a respondeat superior theory.  *Monell v. Department of Social Services*, 436 U.S. 658, 691

25   (1978).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor."  *Id*.

26   The local government "itself must cause the constitutional deprivation."  *Gillette v. Delmore*,

27   979 F.2d 1342, 1346 (9th Cir. 1992).  To maintain a Section 1983 claim against the local

28   government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable

to municipal policymakers) and the requisite causation (the policy or custom as the "moving

force" behind the constitutional deprivation. *See Monell*, 436 U.S. at 691-94. A local

government entity may be liable under Section 1983 "if its deliberate policy caused the

constitutional violation alleged." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.

2007).

As there is no evidence that Plaintiff was deprived of his constitutional rights, there is no

basis for Plaintiff's second cause of action for municipal liability against the City.

**CONCLUSION**

For the foregoing reasons, the City's motion for summary judgment is GRANTED.

Judgment shall be entered in favor of Defendants and against Plaintiff. A separate judgment

shall issue and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 14, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California